THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant and Cross-Appellee, *v.* ACIB KEPI, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   No. 78-248

Opinion filed October 26, 1978.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Sherman C. Magidson, of Chicago (Carl P. Clavelli, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Acib Kepi, was charged with four counts of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)), and he filed a motion to suppress a towel and a jacket seized by the police. The trial court sustained the motion to suppress the towel and denied the motion as to the jacket. The State appeals from the order to suppress the towel, and the defendant has filed a cross-appeal from the remainder of the order refusing to suppress the jacket.

At the hearing on the motion, Kenneth E. Kopesky, a Kenosha,

Wisconsin, police officer, testified that on May 11, 1977, at 1:50 a.m., he and his partner went to the emergency room of St. Catherine's Hospital in Kenosha where they saw defendant lying on a table with his right forearm bandaged. They asked what had happened and the defendant told them that he had gone to his former girl friend's apartment at 908 46th Street in Kenosha. After exiting his car about 1:20 a.m., he walked between houses toward the back but stopped to light a cigarette. He then felt something hit his arm, and it started to ache and bleed. He did not see or hear anyone, although he claimed the shot came from the street area. He went upstairs and got some towels to stop the bleeding. From there defendant went to the home of a Mr. Nafi, then to his present girl friend's home, and finally to the hospital. Defendant gave the police a home address which was not the same as that of his former girl friend. The officers were permitted to see defendant's wound, which was in his forearm; it appeared to be a through-and-through wound. There were powder burns around the skin at the entrance to the wound, which were larger than a penny. The powder residue indicated to Officer Kopesky that defendant had been shot at very close range rather than from the distance defendant claimed.

The officers, together with Mr. Nafi, a friend of the defendant who had accompanied him to the hospital, went to the address of defendant's former girl friend. Using flashlights, they checked the sidewalk and area surrounding a nearby house for bloodstains and spent shells but did not find any. About 2:10 a.m. they entered an enclosed porch leading to the second-floor apartment but saw no bloodstains. From the bottom of the stairway Officer Kopesky could see the second-floor apartment, and he noted the door was wide open and the kitchen light was on. He, the other officer and Nafi ascended the stairs, and the officers drew their weapons. Officer Kopesky saw no bloodstains on the stairs, but, when he reached the open doorway, he looked into the kitchen and saw fresh bloodstains on the floor.

Kopesky testified they did not believe the defendant's account of how he received the wound. He said that he entered the apartment because he believed that the defendant had shot his former girl friend in the apartment or that the person who shot the defendant was in the apartment awaiting defendant's return.

The police examined each room, but there is no indication this was more than a cursory examination, primarily carried out to ascertain if the female occupant was there and in an incapacitated condition. Officer Kopesky saw several bloodstains leading to a wet, bloodstained towel underneath the kitchen sink in an open cabinet-type area, which he seized.

The police returned to the hospital and informed the defendant that

they did not find any evidence to support his account of the shooting. Kopesky read the *Miranda* warnings to the defendant and questioned him as to the whereabouts of his former girl friend. The defendant replied that she was probably at a tavern. The officers then consulted further with the doctor who told them that the powder burns indicated that the shooter was only 2 or 3 feet away from the defendant when the shot was fired. When a metallic object was removed from the defendant's wound, Kopesky observed that it was a silver rivet which matched those on the cuff of the defendant's jacket which was laying on a chair in the hospital room. Officer Kopesky took the jacket and saw a hole in the sleeve and what appeared to be powder burns on the jacket. This officer informed the defendant that he was turning the towel and jacket over to the detective bureau for investigation. The defendant was not arrested at that time.

In support of his motion to suppress, the defendant presented the testimony of Ahmet Nafi Dereogin, known as Nafi. He testified that he accompanied the police to the Kenosha apartment but could not recall if the door was open. He did say the officers knocked before entering, and they then found the towel. Also Jean Marie Hopkins testified that she and the defendant resided together in the apartment, and that on the day of the shooting the defendant's personal property was still in the apartment, although they had agreed to date other people.

The State contends that the trial court erred by suppressing the admission of the towel in evidence after it found that no exigent circumstances existed to allow the warrantless entry by police into the apartment. The critical question to be determined is whether the warrantless police entry to the apartment was proper. If the procedure was correct, the seizure of the towel would be proper if the item was in plain view. (*People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731.) The State has sought to justify the police entry by claiming exigent circumstances authorized the procedure. Defendant maintains that the police lacked a reasonable belief that an emergency existed at that time to allow them to enter the premises; that the towel was not inadvertently discovered but was the product of a search; and that the police did not have knowledge the towel was evidence of a crime and, therefore, not subject to seizure.

■■■ It is well established that the police may make a warrantless entry into private premises based on circumstances confronting them at the time of the entry which convince them that an emergency situation exists. Thus in *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207, a warrantless police entry was upheld where the police knew that the occupant had been missing for a week and they detected a strong odor they associated with a dead human body. In *People v. Clayton* (1975), 34

Ill. App. 3d 376, 339 N.E.2d 783, a warrantless entry by the police into the defendant's home was approved where his estranged wife was missing, he had previously tried to break into her bedroom, and three days earlier had held her at gunpoint and threatened to kill her. And in *People v. Lovitz* (1976), 39 Ill. App. 3d 624, 350 N.E.2d 276, *cert. denied* (1977), 434 U.S. 842, 54 L. Ed. 2d 107, 98 S. Ct. 141, the emergency doctrine was invoked to validate a warrantless entry where the police had a tip the defendant had killed his wife and was going to leave town with their daughter, they observed numerous flies through a window, and upon entering one room smelled an odor of decaying flesh. Similarly, when the police come upon the scene of a homicide, they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. (See *Mincey v. Arizona* (1978), ___ U.S. ___, 57 L. Ed. 2d 290, 98 S. Ct. 2408.) In the present case both the State and defendant dispute the ramification of the facts confronting the police as they entered the apartment as to whether there was a reasonable belief of a life-threatening situation.

The record irrefutably establishes a basis to accept the belief of Officer Kopesky that defendant's version of this incident was a fabrication. The powder residue about the entrance wound in defendant's forearm clearly showed that defendant could not have been shot from a distance as he claimed. Moreover, the type of wound suggested that defendant could have bled profusely. Yet when the officers examined the area where defendant said he was shot, they did not find any bloodstains.

Defendant advised the police he had gone to the apartment of his former girl friend after being shot, but no bloodstains were found on the stairway. However, as the officers approached that stairway about 2:10 a.m., less than an hour after the time defendant said the shooting occurred, Officer Kopesky saw the apartment door was wide open and the light was on. And prior to his entry into the apartment he could observe fresh bloodstains on the floor.

We are not persuaded by defendant's position that the police did not have a reasonable belief that the apartment did not give the appearance that an emergency existed. Certainly, the fact the officers drew their weapons as they ascended the stairway belies defendant's argument that the police were merely extending their investigation from the surrounding area into the apartment. The police were confronted with knowledge of a shooting and the fact defendant, by his admission, had been in the apartment of his former girl friend shortly thereafter, although his version was contradicted by substantial physical evidence. The apartment door was open at 2 a.m., suggesting a rapid departure from the premises, and defendant did not immediately seek medical attention for his wound or contact the police. There is also no showing of police intent to invade

defendant's right to privacy. The police did not even know defendant lived in the apartment because he gave them another address as his place of residence. When the aforesaid factors are taken in conjunction, we do not find the police entry was improper. Though the circumstances encountered by the police in this cause may not have been as striking as those found in the emergency doctrine cases we have noted, they still establish that the police belief that human life might be in danger was reasonable.

■■ The seizure of the towel was also authorized. This article was obviously evidence of a crime relating to defendant's shooting. Moreover, the record establishes that the towel was in plain view because Officer Kopesky testified that it was under the sink in an open area. His testimony indicated that he did not pry into any places not discernible from the kitchen area where he saw the bloodstains on the floor leading to the sink. We, therefore, reject defendant's contention in these regards.

■■ Defendant acknowledges that ordinarily an appeal from a denial of his motion to suppress the jacket would not be proper at this juncture of the case. (*People v. Miller* (1966), 35 Ill. 2d 62, 219 N.E.2d 475.) The right of appeal is governed by the Supreme Court Rules and must be in compliance therewith. (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495.) The right of appeal from an order granting a motion to suppress evidence prior to a conviction is provided solely for the State. (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a).) And we note that no rule concerning civil interlocutory appeals is applicable to criminal proceedings. (Compare Ill. Rev. Stat. 1977, ch. 110A, par. 612.) This court, therefore, is without authority to consider the defendant's cross-appeal, and it is therefore dismissed.

The order of the circuit court suppressing the towel is reversed; defendant's cross-appeal is dismissed. The cause is remanded for further proceedings.

Order reversed in part; cross-appeal dismissed and cause remanded.

JOHNSON, P. J., and LINN, J., concur.