THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY DANCY, Defendant-Appellant.

First District (2nd Division)   Nos. 77-1832, 78-277 cons.

Opinion filed March 13, 1979.

James J. Doherty, Public Defender, of Chicago (Robert T. Badesch, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joseph P. Quirk, and John J. Moran, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The sole issue presented in this consolidated appeal is whether it was reversible error for the trial court, in each of two bench trials relating to separate incidents, to deny defendant's motions to quash his arrest and to suppress evidence obtained as a result thereof on the grounds that the arrest and attendant search of defendant were illegal. We affirm.

On the evening of January 13, 1976, Chicago police officers Larry Dush, Kenneth Christiano, Nancy Stileko and Marion Meeks, in cooperation with Investigator James Cashman of the Illinois Central Gulf railroad police, were conducting a stakeout of the Illinois Central commuter station at 5900 South Dorchester in Chicago. Dush was aware that armed robberies had occurred at this station on December 29, 1975, and January 12, 1976. In the former incident the victims had reported only one offender, described as a male Negro, approximately 24 to 30 years old, 6' to 6'1" in height, between 180 and 200 pounds in weight, wearing a dark ski jacket and green knit cap, and armed with a butcher knife. In the latter incident, the victims described two offenders, the first a male Negro, 18 to 20 years of age, 6' to 6'1" in height, weighing 170 pounds, of heavy build, wearing a green knit cap and a dark blue overcoat. The second offender was described only as a male Negro, 16 to 18 years of age. A knife was also used in this incident. In both incidents the older offender had put his hand under the skirt of a female victim. The first incident occurred at 8 p.m.; the second at 7 p.m.

During the January 13 stakeout the Illinois Central security officer at

street level was positioned so as to be able to observe persons passing through the station entrance and inform the police officers on the station platform by radio if anyone matching the suspects' descriptions entered the station. Access to the platform could also be obtained by climbing an embankment south of the station entrance, which would necessitate trespassing on railroad property.

All police officers were in position at about 6:45 p.m. No radio message regarding arrival of persons matching the suspects' descriptions had been sent when, at approximately 8:15 p.m., the officers on the platform noticed Dancy and a companion, Reginald Johnson, about three feet from the south edge of the platform. There were no people on the platform for about 10 minutes before Dancy and Johnson were observed. The officers did not see the manner in which these two men gained access to the platform.

Officer Dush described the man later identified as Dancy as a male Negro, approximately 6'1", heavy in build, "probably" 165, 185 or 195 pounds, and wearing a dark bulky jacket. Dush later estimated Dancy to be 27 to 28 years old, 6'2" tall, and 200 to 220 pounds in weight. When asked to make an in-court identification, Dush incorrectly identified Dancy as Johnson, and vice versa.

Officer Dush testified that Dancy and Johnson remained at the south end of the platform for several seconds, then moved north toward the station's warming house, and went inside. Proceeding to the north end of the warming house, Johnson brushed or pushed Officer Stileko, a female, for no apparent reason. Dush went to the south end of the warming house where Dancy was standing, identified himself as a police officer, and asked him to place his hands against the wall. When Dancy did not comply, Dush testified that he took a few steps toward Dancy, who made a movement with his left hand, bringing it closer to the center of his body. At that point, Dush testified, he pinned Dancy against the wall and made a quick search which revealed the presence of a knife exceeding one foot in length in Dancy's left pocket. Dush arrested Dancy for trespass, armed robbery and unlawful use of weapons.

Johnson was also arrested at that time.

Officer Christiano testified that he first saw Dancy and Johnson when they entered the warming house and watched the arrests from outside, near the southeast corner of the structure, which occurred within two minutes after defendants entered. Although neither was formally charged with trespassing, Officer Christiano testified he believed filing of such a charge was requested because Dancy and Johnson were not observed at any time near the station entrance and first appeared at the south end of the platform, which was accessible only by trespassing on railroad property.

After Dancy and Johnson were arrested, they were produced in lineups for viewing by one of the victims of the December 29 armed robbery and both victims of the January 12 armed robbery. Dancy was identified by all three victims; the fourth victim identified Dancy at a subsequent court hearing.

Following their indictments, Johnson and Dancy were tried separately. In his two bench trials the lineup identifications of Dancy were introduced in evidence, as was the knife allegedly taken from him at the time of his arrest. Dancy was found guilty on four charges of armed robbery and was sentenced to two concurrent terms of six to 20 years' imprisonment for the first offense and two concurrent terms of five to eight years' imprisonment for the second.

■■ Defendant contends that at the time Officer Dush approached Dancy and asked him to put his hands against the wall of the warming house, there was no probable cause to believe Dancy had committed the robberies for which he was later charged; thus, the search of Dancy's person by Dush was incidental to an unlawful arrest, as were the lineup identifications which followed. Evidence obtained through an illegal arrest or search may not constitutionally be admitted in a criminal prosecution of the party whose rights were thus violated (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1349; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *People v. Bean* (1970), 121 Ill. App. 2d 332, 257 N.E.2d 562), so that reversal of Dancy's convictions would be required if his arrest was illegal.

Chronologically, the events leading up to Dancy's arrest began when Officer Dush approached him. At that time Dush was acting on a general description of a suspect in the earlier armed robberies as a male Negro, age 20 to 30, 170 to 200 pounds in weight, 6' or more in height, wearing a dark blue overcoat or dark ski jacket and a green knit cap. Dancy was a male Negro of approximately the height, weight and age of the suspect in the two earlier armed robberies, and was wearing a dark, bulky jacket. He was wearing a knit cap; however, it was brown in color.

■■ Additional facts and circumstances known to Dush included: Dancy being with a second man, and the more recent robbery having involved two offenders; Dancy and Johnson having appeared to have gained access to the platform by climbing an embankment in trespass rather than entering through the station entrance; the two men were at the site of two recent robberies at approximately the same time of day when the earlier robberies occurred; and that Dancy's companion had apparently deliberately brushed against a female member of the stakeout detail, since it was known that the prior robberies also featured sexual advances toward women victims. The foregoing, coupled with the descriptions of

the offender known to the officers was sufficient to establish the necessary probable cause justifying the arrest without a warrant. *People v. Jenkins* (1975), 31 Ill. App. 3d 910, 915-16, 335 N.E.2d 87; *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606.

On similar facts probable cause existed for an arrest of an individual matching the description of a suspect in a prior crime. In *People v. Vodicka* (1971), 1 Ill. App. 3d 1062, 275 N.E.2d 731, the prior crime was a battery in which a male passenger had attempted to force a woman passenger to sit on his lap in an elevated train in Chicago. The next day, at a station on the same line, but somewhat removed from the place where the battery occurred, a security officer observed a man matching the description of the battery suspect brush against a woman's leg, and on that basis arrested him. The arrest was found to be lawful so that evidence obtained in an incidental search was admissible at the subsequent trial. We regard the network of facts and circumstances in the present case as even stronger. The trial court's finding of probable cause is not manifestly erroneous. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. White* (1977), 51 Ill. App. 3d 155, 366 N.E.2d 491.

■■ Defendant urges that his alleged trespass could have served as no more than a pretext for arresting him so that he could be subjected to lineup identifications related to the previous armed robberies, and relies upon *Amador-Gonzalez v. United States* (5th Cir. 1968), 391 F.2d 308, for the proposition that the use of such a trivial basis to effect an arrest is unlawful. In *Amador-Gonzalez*, however, the narcotics officers followed a suspected drug purveyor until he committed several traffic violations and stopped him, followed by a vehicular search which produced illegal narcotics. This is readily distinguishable from the present case, since Dancy was not followed, but independently made his appearance at the stakeout at about the same time and place as were involved in the earlier offenses. Conducting a search in the instant case was also justifiable, since here defendant's probable access to the platform by trespass, the nature of the temporary, investigative stop, and the information that the suspect was known to be armed with a knife permitted a limited search of defendant's outer clothing for weapons. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Smith* (1977), 51 Ill. App. 3d 87, 366 N.E.2d 426; *People v. Garza* (1976), 44 Ill. App. 3d 30, 357 N.E.2d 1264.

Dancy attacks the ambivalence of Officers Dush and Christiano as to whether Dancy was approached because he was suspected of trespass, or not, and argues that the prosecution should not be permitted to characterize Dancy's arrest as the culmination of a "stop and frisk" on appeal. In sum, the defense argues that the officers were simply "out to get" Dancy for a lineup and availed themselves of whatever pretext they

could to arrest him, leaving it to the State's Attorney to supply a legal basis for their actions.

Assuming, *arguendo*, that this characterization of the police officers' actions is correct, such motivation would provide no ground for finding their conduct unlawful. The conduct of police officers is required to be lawful and sensitive to the legal constraints applicable to their action; however, their motives are properly based on the practical goals of preventing crimes and apprehending criminals. (*People v. Burleson* (1977), 50 Ill. App. 3d 629, 365 N.E.2d 1162; *People v. Asey* (1967), 85 Ill. App. 2d 210, 229 N.E.2d 368.) Their actions may be based upon factual and practical considerations of everyday life upon which reasonable and prudent men act, not necessarily those of legal technicians. *People v. Thornton* (1977), 47 Ill. App. 3d 604, 610, 365 N.E.2d 6; *People v. Colbert* (1973), 10 Ill. App. 3d 758, 760, 295 N.E.2d 225.

■■ We find, therefore, no basis in the arresting officers' alleged ambivalence as to the legal theory under which they were acting that requires a finding of illegality in their conduct.

Having determined that Dancy's arrest and search were lawful, we affirm his convictions for armed robbery.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.