THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ARTHUR PEREZ (Impleaded), Defendant-Appellee.

First District (1st Division)   No. 78-256

Opinion filed June 4, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

George P. Lynch, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The State appeals from an order of the circuit court suppressing oral statements allegedly made by defendant, Arthur Perez. (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1).) The State contends that the circuit court erred in granting defendant's motion to suppress because defendant was given his *Miranda* warnings before he made each statement.

A multicount indictment charged defendant and Antonio Perez with murder, burglary and armed robbery occurring on April 17, 1975. Defendant was taken into custody about 9:30 p.m. on October 12, 1975, outside a tavern in Chicago. The arrest was effected by Lieutenant Hensley and Detective Dulay of the Chicago Police Department and Investigator Nevergall of the Illinois State Police. The arrest was ostensibly predicated upon several outstanding traffic warrants. Defendant was then taken to Area 4 headquarters in Chicago, where he remained

until the evening hours of October 13, 1975. Defendant was then transferred to a suburban police district for a court appearance the following day. The principal aspects of this case concern the events occurring while defendant remained at Area 4 police headquarters.

John Nevergall testified that an interview was conducted at police headquarters on October 12, 1975, about 10:30 p.m. Defendant was seated in an interview room, and he was handcuffed to the wall. About 10:30 p.m., Nevergall read defendant his *Miranda* rights from a card and gave defendant the card so he might read those warnings which were written in Spanish. Defendant, however, gave the card back and indicated that he understood his rights. Hensley then asked for defendant's personal property and obtained two rings; one ring had a diamond setting. In response to Hensley's inquiry at that time, defendant said he purchased the diamond ring about one year before from a Chicago jeweler. Nevergall's written report indicated that defendant refused to answer any further questions. Nevergall further testified that he and Hensley left the room. Nevergall returned about midnight and arranged for defendant to go to the washroom.

The record shows that about 1 a.m. the victim's daughter arrived at the police station and identified the diamond ring taken from defendant. Nevergall and Hensley returned to the interview room to ask defendant about the ring. They informed defendant of his *Miranda* rights, which defendant said he understood, and told defendant that he was suspect in a murder investigation. Hensley asked defendant if he wanted to speak about the diamond ring, but when defendant declined, both officers left the room.

About 11 a.m. on October 13, 1975, Nevergall again entered the interview room. An assistant State's Attorney was also present, who informed defendant of his *Miranda* rights and explained the reason for his detention. At noontime an assistant State's Attorney again advised defendant of his *Miranda* rights. Defendant stated that he understood, and defendant told them he had gotten the ring in question from another individual who had been taken into custody during the interim. This person's name was obtained from an address book taken from defendant's possession.

Nevergall next saw defendant about 9 p.m. that day and told him that a murder complaint had been lodged against him. Defendant was eventually transported to the Des Plaines police station where he was kept until his court appearance in Niles the following day, October 14, 1975.

Nevergall denied that defendant was physically abused in any manner, and defendant did not ask for the assistance of counsel at any time in this witness' presence. Nor was Nevergall aware if any attorney came to see defendant while he was at Area 4 police headquarters.

Lieutenant John Hensley substantially confirmed Nevergall's testimony concerning defendant's arrest, the conversation at 10:30 p.m. at the police station concerning the ring, and the fact defendant was advised of his *Miranda* rights before this discussion and indicated his understanding thereof. At 1 a.m., he and Nevergall returned to see defendant, who was again advised of his *Miranda* rights. Defendant was told he was a murder suspect because the ring taken earlier from defendant belonged to the victim and could not have been obtained by defendant as he previously indicated. Defendant then denied his prior account of how he gained possession of the ring and said that he purchased it several months ago from someone on the street. Defendant then said he did not want to speak further of the matter. After this conversation, Hensley had no further contact with defendant since the State police were conducting the investigation. Hensley stated that defendant was not abused by police.

Assistant State's Attorney Michael Epton testified at the hearing on defendant's motion to suppress statements, that he spoke briefly to defendant on October 13, 1975. He advised defendant of his *Miranda* rights but then left when defendant declined to say anything. This witness denied promising to help defendant if he cooperated.

Terry Sullivan was the supervising assistant State's Attorney in the Niles courtroom. He did not recall ever seeing defendant but explained that the volume of cases could have lessened his recollection.

Defendant testified that he had never been notified prior to his arrest that he was the subject of an outstanding traffic warrant. Defendant claimed that after his arrest he was questioned at least one dozen times by Nevergall, Hensley, Officer Shine or assistant State's Attorney Epton. Defendant denied anyone informed him of his *Miranda* rights, and he stated that he attempted to invoke his right to counsel many times during the time he was at the police station. Specifically, when Nevergall told him, "let me help," defendant said that he asked that the police contact his attorney. When the police then informed him that "it was a sinking ship" because witnesses implicated him, defendant asked to make a telephone call. Defendant also claimed that Nevergall prevented him from using the washroom. Defendant recognized Epton but denied Epton ever advised him of his *Miranda* rights. Defendant also said that during the evening of October 13, an attorney named Kaplan came to see him at the police station at the request of a friend. Defendant asserted that just before he was brought before a judge in the Niles courtroom, assistant State's Attorney Sullivan told him to "help himself." Defendant refused and Sullivan then purportedly hit him when he was brought before the judge.

On cross-examination defendant said that he was not hit or intimidated by any police officer. Defendant explained that he was

referring to the ring, not identified as belonging to deceased, when he said he purchased that item from a jeweler a year before his arrest. He admitted making a statement about 1:30 a.m. on October 13, 1975, when he was informed that he was going to be charged with murder and after he requested counsel. Defendant told police that he bought the victim's ring from another man whose name he gave to police.

Lieutenant Hensley testified in rebuttal that defendant was advised of his *Miranda* rights; that he never heard defendant request the assistance of counsel; that he only entered the interview room on two occasions; and that he never saw Officer Shine in the interview room. Further rebuttal testimony was offered by Investigator Nevergall who stated that defendant never asked to speak to counsel; and that he did not recall seeing defendant speak to any counsel except the assistant State's Attorney. Officer Thomas Shine testified in rebuttal that he knew defendant; that he commenced his shift of duty at 8:30 a.m. on October 13, 1975; and that he could not remember any conversation or, specifically, a discussion with defendant concerning the latter's use of a telephone.

In suppressing the statements given by defendant relating to when and from whom he obtained the victim's ring, the trial court made certain findings of fact. The court found that *Miranda* warnings were not given to defendant before 10:30 p.m. on October 12, 1975; that it was ambiguous as to which ring the police were referring when they spoke to defendant; that such ambiguity would have been alleviated had defense counsel been present; that defendant had been in handcuffs for a 24-hour period and did not lie down; that he saw Attorney Kaplan who was not counsel of his choice; and that defendant was thereafter transported to another police station without informing anyone.

After further discussion, the court also found that defendant was questioned on several occasions, but no physical duress was utilized; and that an offer was given to make the matter "easy for defendant." The court reiterated that defendant did receive his *Miranda* rights at 1:30 a.m. on October 12, 1975, and from assistant State's Attorney Epton later that morning, although it now expressed uncertainty concerning the sufficiency of the *Miranda* warnings given defendant at 10:30 p.m. on October 12, 1975. The court found defendant understood his *Miranda* rights but not necessarily the "legal implications" of those rights. When the State requested that the court make a finding concerning whether defendant asked for assistance of counsel between 10:30 p.m. on October 12, 1975, and 1:30 a.m. the next day, the trial court said that it could not make a finding in that regard.

The State suggests the existence of three statements made by defendant. The first statement was made about 10:30 p.m. on October 12,

1975, and the next statement was supposedly given at 1:30 a.m. The third statement according to Nevergall's testimony occurred at 11 a.m. on October 13, 1975, in the presence of an assistant State's Attorney, although defendant said that statement was actually made at 1:30 a.m. It is the State's position that the two initial statements were proper since they were given within four hours of defendant's arrest and after complete *Miranda* warnings. The State further argues that events transpiring thereafter do not affect the validity of these statements. Moreover, the State maintains that the third statement was given over nine hours later and after full *Miranda* warnings; thus, the State concludes that the final statement was voluntary.

Defendant says that he invoked his right to remain silent soon after his arrest, and the trial court's ruling suppressing the statements was not contrary to the manifest weight of the evidence. Further, defendant asserts that the statements were given in return for promises of leniency. Defendant also maintains that his statements were products of an illegal arrest and eavesdropping, and he was erroneously denied a right to obtain the identity of an informant who gave information to police leading to his arrest. The trial court had found sufficient probable cause for defendant's arrest irrespective of any claim of illegal eavesdropping, and it would not direct the State to disclose the informant's identity when defendant sought such information to challenge the validity of his arrest.

■█ On a motion to suppress defendant's statements, the burden is upon the State to show by a preponderance of the evidence that the statements were voluntary. (Ill. Rev. Stat. 1977, ch. 38, par. 114—11(d); *People v. Jackson* (1968), 41 Ill. 2d 102, 109, 242 N.E.2d 160.) The trial court's determination will not be set aside unless contrary to the manifest weight of the evidence. (*People v. Henne* (1974), 23 Ill. App. 3d 567, 572, 319 N.E.2d 596.) Applying these principles to the present case, we believe that the trial court's evidentiary evaluation was erroneous in several respects.

We have examined the record and are in agreement with the trial court's initial observation that *Miranda* warnings were properly given to defendant at 10:30 p.m. on October 12, 1975, and shortly after 1 a.m. the next day and that defendant understood those warnings. While the court then expressed some question regarding the initial *Miranda* warnings, we believe that the record properly shows compliance with *Miranda* in this regard which would render admissible defendant's statements at those times, unless other factors would dictate a contrary result.

It would appear that the trial court's conclusion was, in part, based on the fact that some confusion existed between defendant and police as to which ring their inquiry was directed when defendant made his statements. The police said that they asked about the ring taken from the

victim while defendant stated that his response was directed toward the other ring he was wearing which apparently was unrelated to the investigation. The trial court concluded that the presence of counsel would have vitiated this difficulty. However, this reasoning does not affect the voluntariness of the statements.

■■■ Another basis set forth by the trial court was the fact that an offer was made to make it "easy for defendant" presumably if he cooperated. Statements made in return for promises of leniency or immunity may render the statements involuntary. (*People v. Jones* (1972), 8 Ill. App. 3d 849, 852-53, 291 N.E.2d 305.) A review of the record, however, shows that no promises were made by Nevergall or Hensley when defendant made his statements. Even if defendant's testimony is believed, his version merely indicated that Nevergall asked to help defendant and other officers advised defendant that he was in serious difficulty. These matters do not establish any promise of leniency. Rather, it would appear that the trial court's conclusion was premised on the offer of assistant State's Attorney Sullivan, purportedly made substantially after the statements at issue. To conclude that this supposed offer in any manner affected the prior statements was manifestly erroneous.

The trial court also seemed to rely on events which transpired long after the statements were made in reaching its conclusion. Such included the arrival of an attorney during the evening of October 13, 1975, and defendant's transportation later that evening to several suburban police stations prior to his court appearance. None of these considerations could affect the statements allegedly given shortly after defendant's arrest.

■■ The fact that defendant made his statement at 10:30 p.m. after his arrest when the victim's ring was taken from him and then indicated that he did not want to speak further of the matter would not necessarily preclude further questioning three hours later. During the interim the victim's daughter identified the ring taken from defendant. It would only seem appropriate for the police to advise defendant of this matter and determine if defendant would give another explanation for his possession. There was no evidence of physical duress applied to defendant. The record indicates that he remained in the interview room during this time and was permitted to go to the washroom, and there was no suggestion that defendant was subjected to interrogation during this time. The statement defendant gave about 1:30 a.m. on October 13, 1975, was preceded by proper *Miranda* warnings. Under the circumstances, we do not believe that defendant's refusal to discuss the matter further at 10:30 p.m. would preclude further police questioning three hours later. *People v. Pittman* (1973), 55 Ill. 2d 39, 56, 302 N.E.2d 7.

■■ There is some question whether defendant made a third statement about noontime on October 13, 1975. Nevergall's testimony indicates that

a statement was made although defendant's testimony is conflicting and is inferentially supported by the testimony of assistant State's Attorney Epton. In any event, the record does not show that this statement, if made, would necessarily be inadmissible upon the theory that defendant had previously stated that he did not want to speak further of the matter. *People v. Pittman.*

■■ However, the statements would be inadmissible if defendant had initially requested the assistance of counsel shortly after his arrest and before giving the statements, but the police failed to honor this request. (*Michigan v. Mosley* (1975), 423 U.S. 96, 101 n.7, 46 L. Ed. 2d 313, 320 n.7, 96 S. Ct. 321, 325 n.7; *People v. Medina* (1978), 71 Ill. 2d 254, 261, 375 N.E.2d 78.) Defendant claimed that he persisted in his demand for counsel while the police testimony indicated no demand was made. The trial court specifically refused to rule on this aspect of the case despite the State's request for a factual evaluation thereon. We therefore believe that the cause must be remanded in order to allow the trial court to render a decision on this critical factual determination. Should this decision be adverse to the State the statements must be suppressed while an opposite adjudication will result in rendering the statements admissible.

■ Defendant has raised various points related to the validity of his arrest in support of his position that the trial court properly suppressed his statements. We recognize the effect a claim of illegal arrest might have upon the accused's subsequent statements. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) However, the trial court had previously found that probable cause existed for defendant's arrest. To consider defendant's assertion at this juncture would, in effect, permit a cross-appeal by defendant of a denial of a motion to suppress evidence. This is impermissible. (*People v. Kepi* (1978), 65 Ill. App. 3d 327, 331, 382 N.E.2d 642.) Moreover, should trial occur, there exists the possibility that additional evidence could be presented which could affect the prior decision on the issue of probable cause. (*People v. Braden* (1966), 34 Ill. 2d 516, 520, 216 N.E.2d 808.) Thus, we will not consider defendant's arguments concerning the validity of his arrest as it might relate to the admissibility of his statements.

Accordingly, the order of the circuit court suppressing defendant's statements is vacated and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Vacated and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.