THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MICHAEL HOUSEHOLDER, Defendant-Appellee.

Third District   No. 79-259

Opinion filed February 7, 1980.

Edward R. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel Walker, Jr., of Dan Walker Law Office, of Oak Brook, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Defendant Michael Householder was charged by information with unlawful use of weapons in violation of section 24—1(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(7)). Defendant thereafter moved to suppress a sawed-off shotgun forming the basis of that charge pursuant to the warrentless search and seizure provisions of section 114—12 (a)(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12 (a)(1)). After a hearing in the circuit court of Will County, the trial court suppressed the shotgun and the People appeal pursuant to Supreme Court Rule 604 (a)(1). Ill. Rev. Stat. 1977, ch. 110A, par. 604 (a)(1).

According to the direction of section 114—12(e) of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(e)), the trial court stated the findings of facts and conclusions of law upon which its decision was based:

"The findings of fact to the Court and that on the date in question, July 13th, there was a domestic argument, dispute, between Michael Householder, residing at 1600 Willowbridge, Apartment 115, and his wife, Robin, and that argument, or disturbance, took place roughly in the late afternoon of that day.

The parties were married, had one child, age five, residing with them in the one bedroom apartment.

I find further from the evidence that Mrs. Householder sought the assistance of the police in obtaining her possessions and belongings and returned to the apartment, with the officers, in question.

She was allowed entry into the apartment by her husband and the door was left open. She went to secure her belongings. The owner of the apartment, Mr. Householder, decided to close the door because of the disturbing noises on the outside, and the officer prevented him from closing the door, stated the reason to be that this was a domestic disturbance, and it is my finding of fact and conclusion of law that the entry of the officer into the apartment was without consent. There was no reasonable ground to believe that any crime was being committed, and I therefore hold that the motion to suppress the evidence be and the same is hereby allowed."

It is the People's position that the entry into defendant's apartment was consensual, thereby rendering the shotgun subject to seizure under the plainview doctrine articulated in *Harris v. United States* (1968), 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992, and other decisions.

In ruling on a motion to suppress, it is the province of the trial court to determine the credibility of witnesses and the weight to be given their testimony, and its findings will not be disturbed upon review unless contrary to the manifest weight of the evidence. (Accord, *People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516; *People v. Mullens* (1978), 66 Ill. App. 3d 748, 383 N.E.2d 1369; *People v. Wiggins* (1976), 45 Ill. App. 3d 85, 358 N.E.2d 1301.) The sole question presented for our determination is thus whether the trial court's finding that the police entry into defendant's apartment was nonconsensual is manifestly erroneous.

■■ Preliminary to our consideration of this question, we note the People also submit the warrantless entry of Officer James Ariagno was justified by the circumstances facing him and Officer Lee Capista, who accompanied Officer Ariagno to the apartment. While police officers may act on information given by a private citizen (*e.g., People v. McElroy* (1976), 44 Ill. App. 3d 1047, 358 N.E.2d 1180) and properly base their motives on the goals of preventing crimes and apprehending criminals (*e.g., People v. Dancy* (1979), 69 Ill. App. 3d 543, 387 N.E.2d 889), these guidelines have little application to the case at bar. Noted by the trial court and unchallenged by the People is the absence of reasonable grounds to believe any crime was, or had been, committed by the defendant. Yet it was uncontroverted that Officer Ariagno physically prevented the defendant from closing his apartment door and subsequently entered the apartment. The People contend this conduct was justified as the officers were confronted with an emergency situation. Citing *People v. Kepi* (1978), 65 Ill. App. 3d 327, 382 N.E.2d 642, the People correctly note that it is well established that the police may make a warrantless entry into private premises based on circumstances confronting them at the time of the entry which convince them that an emergency situation exists. *Kepi* involved a police investigation of an apartment after a shooting. Prior to the entry of the officers through an open door at 2:10 a.m., one officer noticed fresh blood stains on the apartment floor. Noting that "the circumstances encountered by the police in this cause may not have been as striking as those found in the emergency doctrine cases we have noted," the court found it was reasonable to believe human life might be in danger. (*People v. Kepi* (1978), 65 Ill. App. 3d 327, 331, 382 N.E.2d 642, 645.) In the case at bar, no similar circumstances existed. Our review of the record reveals no testimony indicating the presence of any emergency, exigent circumstances, or physical danger justifying the police

conduct. Therefore, only the consent of the defendant could justify the eventual seizure in this case.

■■ The question of what the prosecution must establish to demonstrate that a consent was voluntarily given was addressed in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 228, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048:

> "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion were applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed. * * * "

In the case at bar, the trial court found the officer prevented the defendant from closing his door and that his subsequent entry was illegal. Our review of the record reveals the former finding to be based on uncontroverted testimony while the latter arises from conflicting versions of the entry. Officer Ariagno testified the defendant asked him to enter the apartment, after the door had been blocked, so the defendant could hear a television program uninterrupted by noise from an adjacent laundry room. The defendant testified the officer entered his apartment, without his consent, after blocking the door. The defendant's wife confirmed the blocking of the door but did not testify as to the other circumstances of the entry. Officer Capista did not testify at the hearing.

■■ While the entry of Officer Ariagno was clearly nonconsensual if defendant's version of this incident is accepted, it was unnecessary for the trial court to make this determination. Assuming, *arguendo*, that defendant asked the officer to enter the apartment after he blocked the door, this request is not equivalent to consent to enter the apartment. The blocking of the door is certainly more overt than the subtle coercion or implicit means of obtaining consent established by *Schneckloth* as the threshold of objectionable action. In the words of the court in *People v. Clark Memorial Home* (1969), 114 Ill. App. 2d 249, 252 N.E.2d 546, 549: "The whole atmosphere of the purported consent was at best, one of submission or resignation to police authority."

■■ The People additionally contend an implied consent to enter the apartment had been given by defendant's wife. We note the following colloquy which transpired during the hearing:

> "Q. Did you at any time ask any of the officers to come into the apartment with you?
> A. No
> MR. CHABALEWSKI: Objection.
> THE COURT: Your objection as to what?
> MR. CHABALEWSKI: To the fact that it's beyond the scope of my

direct case. I never brought in anything about consent or anything of the wife."

An issue not presented to nor considered by the trial court cannot be raised for the first time on review. *E.g., Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

■■ The question of whether a consent to a search was in fact voluntary is "a question of fact to be determined from the totality of all the circumstances" (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048), and situations involving a consent to enter are similar to those involving a consent to search. (See LaFave, *Search and Seizure: "The Course of True Law . . . Has Not . . . Run Smooth,"* 1966 U. Ill. L. Forum 255, 337.) Considering the totality of all the circumstances in the case at bar, we do not find the decision of the trial court to be manifestly erroneous.

Accordingly, the order of the circuit court of Will County suppressing the seized evidence is affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.