311 S.E.2d 144

**STATE of West Virginia**

v.

**William Howard CECIL, III.**

**No. 15876.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Thomas L. Butcher, Public Legal Services, Charleston, for appellant.

Chauncey H. Browning, Atty. Gen. and Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon the petition of William Howard Cecil, III, for an appeal from his convictions in the Circuit Court of Greenbrier County, West Virginia, for the offenses of murder of the first degree and sexual abuse in the first degree. *W.Va.Code*, 61–2–1 [1931]; *W.Va. Code*, 61–8B–6 [1976]. Pursuant to its final order, the appellant was sentenced by the circuit court upon the murder conviction to confinement for life in the penitentiary without a recommendation of mercy. The appellant was sentenced upon the sexual abuse conviction to confinement in the penitentiary for not less than one year nor more than five years. Those convictions were based upon pleas of guilty entered by the appellant in circuit court on June 30, 1982. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

In November, 1981, the appellant was indicted in the Circuit Court of McDowell County, West Virginia, for the felony offenses of murder of the first degree and sexual assault in the first degree. *W.Va. Code*, 61–2–1 [1931]; *W.Va.Code*, 61–8B–3 [1976]. The appellant entered pleas of not guilty and was granted a court appointed attorney. Subsequent to psychiatric and psychological evaluations, the appellant was found competent to stand trial.[1] In February, 1982, venue in the case was transferred from McDowell County to Greenbrier County.

The appellant's trial in Greenbrier County began on June 29, 1982. The evidence of the State indicated that on August 30, 1981, in McDowell County, the appellant, who was 18 years old, sexually assaulted or abused, and then murdered, Millie Jean Ratliff, who was three years old and was the daughter of William and Mildred Ratliff.[2] The record indicates that another person was implicated in conjunction with the appellant in the death of Millie Jean Ratliff.

1. The psychiatric evaluation report of the appellant, dated January 20, 1982, stated, in part, as follows: "Conclusion: In reviewing his available social history and clinical psychiatric examination, William revealed no apparent evidence of thought or mood disorder. He is able to differentiate right from wrong. It is felt that William is competent to stand trial and assist his attorney for his defense."

The psychological evaluation report of the appellant, dated January 27, 1982, stated, in part, as follows:

This 18 year old male is currently functioning within the Mildly Retarded classification of intellectual functioning. No signs of organic brain damage or major thought or mood disorders were noted. The client appeared able to differentiate right from wrong although his affect was blunted and he appeared unemotional when discussing juvenile wrong doings. Care should be taken by this man's attorney to ascertain that Mr. Cecil clearly understands what is said to him and the forthcoming legal proceedings. It is believed that Mr. Cecil is competent to stand trial and to assist his attorney in his defense if matters are clearly explained to him in simple and concrete terms.

2. The post-mortem examination of Millie Jean Ratliff stated that death was caused by asphyxia due to smothering.

The evidence of the State further indicated that the crimes occurred at the mobile home of Kenard and Vicky Ratliff where the appellant had been living. According to the State, the appellant, after the murder, placed the body of the child in a plastic bag and hid it under a bed. A general search for the missing child began that day.

The search for the child continued on August 31, 1981. On that day, the appellant was arrested near the mobile home for public intoxication. Shortly thereafter, the body of Millie Jean Ratliff was discovered by police officers, and the appellant, being a primary suspect in the homicide, was taken to the office of a magistrate and charged with murder. At the office of the magistrate, the appellant appeared to still be intoxicated. He was taken to the McDowell County Jail and returned to the office of the magistrate the following day.

During the appellant's trial, the appellant's written confession to police officers, dated September 1, 1981, was admitted into evidence. Two supplemental confessions of the appellant to police officers, dated September 13, 1981, and September 16, 1981, were also admitted into evidence. Furthermore, the jury heard evidence by the State concerning incriminating statements allegedly made by the appellant to his father subsequent to the death of Millie Jean Ratliff. In addition, the State was permitted to indicate to the jury that a hair found upon the body of the child was similar to a hair sample taken from the appellant.

After the State rested its case, the trial judge accepted the appellant's plea of guilty to sexual abuse in the first degree. The trial continued upon the murder charge. The only witness who testified on behalf of the appellant was the appellant's father. That witness testified that the appellant stated to him that police officers threatened the appellant with violence to make the appellant confess to the homicide. However, subsequent to the testimony of the appellant's father, the trial judge accepted the appellant's plea of guilty to murder of the first degree.

The appellant's pleas of guilty to the sexual abuse and murder of Millie Jean Ratliff were made orally and in writing by the appellant on June 30, 1982. As indicated at that time and in an order entered on July 6, 1982, those pleas were found by the trial judge to be voluntarily and intelligently made.

The appellant asserts before this Court that his circuit court convictions of sexual abuse and murder resulted from an ineffective assistance of counsel. In that regard, the appellant raises a search and seizure issue with respect to the finding by police officers of the body of Millie Jean Ratliff on August 31, 1981, and an issue concerning the propriety of his written confessions to police officers, dated September 1, 1981, September 13, 1981, and September 16, 1981. Furthermore, the appellant raises an issue concerning the voluntariness of his plea of guilty to murder of the first degree.[3]

Various principles of law relating to questions of ineffective assistance of counsel were set forth by this Court in the leading case of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).[4] Syllabus

3. All other issues raised by the appellant in this appeal are without merit. In particular, the record does not support a theory that the appellant entered pleas of guilty, or gave confessions, because of threats of violence directed against the appellant by police officers.

4. The principles of *State v. Thomas* concerning questions of ineffective assistance of counsel have been cited by this Court in many subsequent cases which include: *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983); *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776 (1983); *State v. Mullins*, 171 W.Va. 542, 301 S.E.2d 173 (1982); *State v. Jacobs*, 171 W.Va. 300, 298

S.E.2d 836 (1982); *State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461 (1982); *State v. Baker*, 169 W.Va. 357, 287 S.E.2d 497 (1982); *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982); *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981); *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981); *State v. Key*, 166 W.Va. 505, 275 S.E.2d 924 (1981); *Carrico v. Griffith*, 165 W.Va. 812, 272 S.E.2d 235 (1980); *State v. Foddrell*, 165 W.Va. 540, 269 S.E.2d 854 (1980); *Scott v. Mohn*, 165 W.Va. 393, 268 S.E.2d 117 (1980); *State v. Watson*, 165 W.Va. 642, 264 S.E.2d 628 (1980); *State v. Bradley*, 164 W.Va. 68, 260 S.E.2d 830 (1979); *Watson v. Black*, 161 W.Va. 46, 239 S.E.2d 664 (1977); *State ex rel. Wine v. Bordenkircher*, 160 W.Va. 27, 230 S.E.2d 747

points 19, 21 and 22 of that case state as follows:

19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.[5]

21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

22. One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence.[6]

## I

As stated above, the appellant raises a search and seizure issue with respect to the finding by police officers of the body of Millie Jean Ratliff on August 31, 1981. The body was found in a plastic bag under a bed in the appellant's room in a mobile home. The record indicates that to live in the mobile home the appellant may have been paying "board" to the owners. The appellant contends that the finding of the body of Millie Jean Ratliff resulted from a warrantless and unreasonable search and seizure.[7] He therefore contends that, inasmuch as his counsel at trial did not pursue an issue concerning that search and seizure, his counsel was ineffective.

We find those contentions to be without merit. Assuming that a search and seizure occurred, this Court concludes that the police officers acted lawfully under the circumstances of this case, even though they entered the mobile home without a search warrant and found the body. Our conclu-

(1976); *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976).

**5.** With respect to the reference in syllabus point 19 of *State v. Thomas* to "harmless error," it should be noted that in syllabus point 20 of *State v. Thomas* we stated that "[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction."

**6.** As syllabus point 22 of *State v. Thomas* indicates, the party asserting ineffective assistance of counsel carries the burden of proving that assertion. In syllabus point 2 of *State ex rel. Stapleton v. Boles,* 149 W.Va. 645, 142 S.E.2d 896 (1965), this Court held as follows: "The petitioner in a habeas corpus proceeding has the burden of establishing by pleading and proof that ineffective assistance of counsel denied him his constitutional rights and where there is no proper allegation with regard to such matter a demurrer filed in connection therewith should be sustained." The above language of *Stapleton* is relevant to this case, even though this case is before this Court upon an appeal, rather than upon a petition for a writ of habeas corpus.

In *State ex rel. Owens v. King,* 149 W.Va. 637, 640, 142 S.E.2d 880, 882 (1965), this Court stated as follows:

> One who seeks his release from imprisonment by habeas corpus on the ground of mere ineffective assistance of counsel has the burden of proving the charge made. (citations omitted) To justify release from imprisonment by habeas corpus on the ground of incompetency of counsel, an extreme case must exist and it must appear that there has been more than mere inadequacy of representation by counsel.

**7.** *U.S. Const.,* amend. IV, provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, *W.Va. Const.,* art. III, § 6, provides as follows:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

sion is based upon the "emergency doctrine" exception to the rule that a search and seizure by police officers must ordinarily be predicated upon a written search warrant.[8]

■ As the cases cited below indicate, the emergency doctrine has been defined in various ways and must be considered upon a case by case basis. With regard to this case, however, the emergency doctrine may be said to permit a limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable connection between the emergency and the area in question. *See* syl. pt. 2, *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981).[9]

In *State v. Kraimer*, 99 Wis.2d 306, 298 N.W.2d 568 (1980), *cert. denied*, 451 U.S. 973, 101 S.Ct. 2053, 68 L.Ed.2d 353 (1981), the Supreme Court of Wisconsin upheld, under the "emergency doctrine," a warrantless search or entry by police officers of the defendant's home. The police entered the home because of the possibility of the homicide of the defendant's wife and the potential danger to the children living in the home. Furthermore, the police officers had reason to believe that a burglary of the home had occurred. Upon entering the home, the police located the body of the defendant's wife. The defendant was later convicted of manslaughter.

The court in *State v. Kraimer* recognized the emergency doctrine as an exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States. The court stated that the "reasonableness" of a warrantless search or entry under the emergency doctrine is established by the "compelling need to render immediate assistance to the victim of a crime, or insure the safety of the occupants of a house when the police reasonably believe them to be in distress and in need of protection." 99 Wis.2d 315, 298 N.W.2d at 572.

■ Applying the emergency doctrine to the facts in the case, the court in *State v. Kraimer* concluded that the warrantless search or entry of the defendant's home was justified because (1) the police officers, believing an emergency existed, entered the home to render aid to the defendant's wife and to protect the children, and (2) a reasonable police officer, under the circumstances, would have believed that an immediate investigation was necessary.[10] Thus, the police officers were held to have acted lawfully, and the defendant's conviction was affirmed.

**8.** It should be noted that in *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980), this Court held in syllabus point 1 as follows:

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

*See also* syl. pt. 1, *State v. Weigand*, 169 W.Va. 739, 289 S.E.2d 508 (1982); syl. pt. 1, *State v. Cain*, 169 W.Va. 772, 289 S.E.2d 488 (1982); syl. pt. 1, *State v. Farley*, 167 W.Va. 620, 280 S.E.2d 234 (1981).

**9.** The court in *State v. Resler* stated as follows:

While exigent circumstances generally have been defined to exist where the suspect is in a position to flee as when he is in a car, or when the evidence is located in a place or under such conditions that it is likely to be destroyed while a warrant is sought, a further condition has been recognized as an exigent circumstance authorizing a warrantless or nonconsensual entry into a suspect's home. This exception is known as the "emergency doctrine."

209 Neb. at 253, 306 N.W.2d at 922.

**10.** The above conclusions of the court in *State v. Kraimer* were precipitated by that court's recognition of a two-step test concerning the emergency doctrine. As *State v. Kraimer* indicates, to justify the application of the emergency doctrine as an exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States, both a subjective and an objective test must be met. Under the subjective test, the searching officer must actually be motivated by a perceived need to render aid or assistance. Under the objective test, a reasonable person under the circumstances must have thought that an emergency existed.

It should be noted that the Court in *State v. Kraimer* rejected the defendant's assertion that, inasmuch as the police officers had reason to believe that the defendant's wife had been dead several days before the entry in question, no emergency could have existed. The court indicated that the police officers had no way of knowing when they entered the defendant's home that the wife was, in fact, deceased. The police officers merely had information that an unnatural death may have occurred.

Police officers in *State v. Resler, supra,* entered the defendant's apartment without an arrest or search warrant because the officers had reason to believe that the defendant, a suspected prowler, had returned to the apartment after having sustained a gunshot wound. Realizing that the defendant was not in the apartment, the police officers immediately withdrew. Subsequently, the officers obtained search warrants with respect to the apartment and obtained evidence incriminating the defendant. The defendant was later convicted of burglary and sexual assault.

Holding that the police officers acted lawfully, the court in *State v. Resler* stated that the police officers could have reasonably concluded when they made the warrantless entry that the defendant was "wounded and had returned to the apartment, perhaps too weak to either close the door or turn on a light. They were therefore justified in believing that an emergency existed in which they had an obligation to enter the apartment, find ... [the defendant], and provide him necessary first aid." 209 Neb. at 257, 306 N.W.2d at 924.

Other cases supporting the "emergency doctrine" as an exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States include: *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir.1972), *cert. denied* 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); *Patrick v. State,* 227 A.2d 486 (Del. 1967); *Shepherd v. State,* 343 So.2d 1349 (Fla.Dist.Ct.App.1977); *State v. Monroe,* 101 Idaho 251, 611 P.2d 1036 (1980); *People v. Kepi,* 65 Ill.App.3d 327, 22 Ill.Dec.

322, 382 N.E.2d 642 (1978); *People v. Lovitz,* 39 Ill.App.3d 624, 350 N.E.2d 276 (1976), *cert. denied,* 434 U.S. 842, 98 S.Ct. 141, 54 L.Ed.2d 107 (1977); *State v. Theodosopoulos,* 119 N.H. 573, 409 A.2d 1134 (1979), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980); *State v. Beede,* 119 N.H. 620, 406 A.2d 125 (1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980), *rehearing denied,* 446 U.S. 993, 100 S.Ct. 2980, 64 L.Ed.2d 850 (1980); *People v. Mitchell,* 39 N.Y.2d 173, 347 N.E.2d 607, 383 N.Y.S.2d 246 (1976), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976); *State v. Sanders,* 8 Wash.App. 306, 506 P.2d 892 (1973); *State v. Campbell,* 15 Wash.App. 98, 547 P.2d 295 (1976); and *State v. Pires,* 55 Wis.2d 597, 201 N.W.2d 153 (1972). *See also* J. Hall, *Search and Seizure,* §§ 7:10–7:12 (Lawyers Co-op 1982); 2 LaFave, *Search and Seizure* §§ 6.5 and 6.6 (West 1978); Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment,* 22 Buffalo L.Rev. 419 (1973).

In *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), police officers conducted an extensive, warrantless search of the defendant's apartment subsequent to a shooting incident in the apartment between the defendant and other officers. The Supreme Court of the. United States in *Mincey,* noting that the search of the apartment continued for several days subsequent to the shooting incident, concluded that the search could not be justified under the theory of emergency. However, the court stated as follows:

We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises.

**34**

437 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300.

In the action before this Court, a general search for Millie Jean Ratliff by authorities and private citizens began on August 30, 1981. On the evening of August 31, 1981, police officers converged upon the mobile home in question. At that time the officers were acting upon information, recently obtained from the appellant's father, that the child had fallen and had been placed by the appellant in a plastic bag under a bed in a mobile home. The record indicates that when the police officers encountered the appellant on August 31, 1981, near the mobile home, the appellant told the officers where he lived, although he may not have made statements at that time concerning the location of the body. The owner of the mobile home, Kenard Ratliff, permitted the officers to enter the home.

The record clearly indicates that when the police officers entered the mobile home, the appellant, although under arrest for public intoxication, was not yet a suspect of a homicide. The police officers were looking for the missing child, rather than attempting to secure evidence. As Officer Wolfe testified: "All we were interested in was finding the missing child. We didn't know if it was a body or what." The record in this case demonstrates that during the period of time immediately prior to the finding of the body of Millie Jean Ratliff, the police officers were required to promptly assess ambiguous information concerning potentially life threatening consequences. We conclude that the officers acted properly.

■ This Court holds that although a search and seizure by police officers must ordinarily be predicated upon a written search warrant, a warrantless entry by police officers of a mobile home was proper under the "emergency doctrine" exception to the warrant requirement, where the record indicated that, rather than being motivated by an intent to make an arrest or secure evidence, the police officers were attempting to locate an injured or deceased child, which child the officers had reason to believe was in the mobile home, because of information they received immediately prior to the entry. We, therefore, reject the appellant's assertions of error with respect to the finding of the body of Millie Jean Ratliff.

II

The appellant contends that his counsel at trial was ineffective in not more aggressively seeking the exclusion from evidence of the appellant's written confessions, dated September 1, 1981, September 13, 1981, and September 16, 1981. Furthermore, the appellant contends that his counsel did not properly advise him concerning his plea of guilty to murder of the first degree. Those contentions are also without merit.

With regard to the confessions, the principal issue concerns the confession of September 1, 1981. The record indicates that the appellant sought the admission of the September 13, 1981, confession, and the State sought the admission of the September 16, 1981, confession, as a result of the admission in evidence of the September 1, 1981, confession. The appellant indicated in the September 1, 1981, confession that he acted alone in the sexual contact and homicide of Millie Jean Ratliff. The two subsequent confessions, however, implicated another person, as well as the appellant, in the acts in question.

Prior to the appellant's trial, an *in camera* hearing was conducted by the trial court to determine the voluntariness of the appellant's September 1, 1981, confession. As reflected in its order entered on June 29, 1982, the trial court found that the State had "met its burden of proof" in establishing that the appellant's confession of September 1, 1981, was voluntarily made. That confession was later admitted into evidence at trial, over the objection of the appellant's counsel.

Based upon a careful examination of the record, including the testimony taken at the above described *in camera* hearing, this Court finds no error with respect to the admission into evidence of the appellant's September 1, 1981, confession. Nor does the record reveal error with respect to the admission into evidence of the confes-

sions dated September 13, 1981, and September 16, 1981.

 This Court in syllabus point 2 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), held as follows: "It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." [11] Furthermore, in syllabus point 3 of *State v. Vance* we stated that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." [12]

 We find no evidence of ineffective assistance of counsel concerning the appellant's confessions.

Finally, the appellant contends that his counsel was ineffective because he gave the appellant no recommendation concerning the appellant's plea of guilty to murder of the first degree. However, during the taking of the appellant's plea to murder, the trial judge and counsel for the appellant stated, among other things, as follows in the presence of the appellant:

THE COURT: However, do you know of any advantage that there might be to your client if the case proceeded to a conclusion in this trial?

MR. CROCKETT: I do not, other than the technical possibilities of a jury verdict, which I consider highly unlikely, under this evidence; not sufficiently likely to advise against the plea.

 In syllabus point 3 of *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978), this Court held as follows:

Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

*See also* Syl. pt. 3, *Gibson v. McKenzie*, 163 W.Va. 615, 259 S.E.2d 616 (1979); syl. pt. 1, *State ex rel. Burton v. Whyte*, 163 W.Va. 276, 256 S.E.2d 424 (1979).

As set forth above, the evidence of the State admitted at trial included three confessions of the appellant, other statements made by him and a hair sample. That and other evidence tended to incriminate the appellant in both the sexual contact and homicide of Millie Jean Ratliff. The appellant's plea of guilty to murder of the first degree occurred after his father testified at trial in the appellant's behalf.

 The record in this case is sufficient to sustain the determination of the trial court that the appellant's pleas of guilty to both sexual abuse in the first degree and murder of the first degree were voluntarily and intelligently made. *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). We find no evidence of ineffective assistance of counsel, within the meaning of *State v. Sims, supra*.

Based upon the record in this case, we conclude that the appellant has not established that his convictions resulted from ineffective assistance of counsel.

Upon all of the above, the final judgment of the Circuit Court of Greenbrier County, West Virginia, is hereby affirmed.

Affirmed.

---

11. *See also State v. Woods*, 169 W.Va. 767, 289 S.E.2d 500, 502 (1982); syl. pt. 2, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981); syl. pt. 1, *State v. Wimer*, 168 W.Va. 417, 284 S.E.2d 890 (1981); *State v. Lamp*, 163 W.Va. 93, 254 S.E.2d 697, 699 (1979).

12. *See also State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720, 728 (1982); syl. pt. 2, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982); syl. pt. 3, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981).