737 S.E.2d 90

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**David FARLEY, Defendant Below, Petitioner.**

No. 11–0803.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 17, 2012.

Decided Nov. 21, 2012.

Robert Lee White, Esq., David Lockwood, Esq., Public Defender, 25th Circuit, Madison, WV, for Petitioner.

Jennifer L. Anderson, Esq., Assistant Prosecuting Attorney, Boone County Prosecuting Attorney's Office, Madison, WV, for Respondent.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Boone County entered on March 24, 2011. In that order, the petitioner entered a conditional guilty plea to first degree robbery. His guilty plea was conditioned upon an appeal to this Court concerning the circuit court's August 31, 2010, order denying his motion to suppress evidence obtained during his arrest. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court did not commit reversible error and, accordingly, affirms the decision below.

## I.

### FACTS

On November 4, 2009, the petitioner attempted to rob the Little General convenience store in Wharton, West Virginia. Store clerk Cassie Burge was working that evening and had been standing just outside the store when she noticed the petitioner approaching with a gun while wearing a black ski mask. She quickly went back inside and held the door closed preventing the petitioner from coming into the store. Ms. Burge told the 911 dispatcher that she saw a gun on the petitioner during the attempted robbery. She also told police officers that the petitioner had a "black gun."

While on the scene, investigating officers learned that an older model red Chevy S–10 pickup truck was seen leaving the area at a high rate of speed. This information led the officers to the home of Tom Lester where they found the red Chevy S–10 pickup truck. At approximately 11:25 p.m., Mr. Lester advised the officers that he had spent the evening at the home of the petitioner, but the officers believed that he had not been truthful with them about the events of that night. Mr. Lester then confessed that he had driven the petitioner to the Little General to rob it.

At 1:34 a.m., on November 5, 2009, the officers arrived at the petitioner's home without a search warrant. They knocked on his door and announced themselves as police officers. After waiting approximately two minutes, the officers knocked again and loudly announced their presence. The officers then heard rapid footsteps as if someone were running through the house. They did not hear a verbal response to their knock and announcement that they were there. It was at this point that the officers made the decision to enter the home for their own safety. Upon entry, they found the petitioner standing in his living room. They ordered him to the floor and secured him. The officers then took a statement from the petitioner and searched his home. They located and seized a gun, various items of clothing, including the black mask, and marijuana. The gun was "in the corner," a green bag containing petitioner's clothing was nearby, and the marijuana (plants and bags) was inside a bedroom closet.

Thereafter, the petitioner was arrested and charged with first degree robbery. On August 31, 2010, the circuit court entered an order denying the petitioner's motion to suppress the evidence gathered from his home during the night of his arrest. On March 23, 2011, the petitioner entered a conditional plea of guilty to first degree robbery.[1] The

---

1. West Virginia Code § 61–2–12, in part, provides:

    (a) Any person who commits or attempts to commit robbery by:

circuit court sentenced him to ten years imprisonment with 505 days credit. The conditional plea provided that if the petitioner was successful in his appeal to this Court of the circuit court's August 31, 2010, denial of his motion to suppress the evidence gathered from his home, he would be permitted to withdraw his plea. More specifically, the petitioner challenged the circuit court's denial of his motion to suppress evidence in response to his allegation that the officers had conducted a warrantless search in violation of the Fourth Amendment.[2] The present appeal followed the petitioner's conditional plea of guilty to first degree robbery.

## II.

### STANDARD OF REVIEW

■ The petitioner appeals the circuit court's order denying his motion to suppress evidence. In *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995), this Court explained the standard of review of a circuit court's ruling on a motion to suppress is a two-tier standard and that:

[W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most

favorable to the prosecution. (Footnotes omitted).

194 W.Va. at 600, 461 S.E.2d at 106. This Court further explained:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syllabus Point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996). With these standards in mind, the petitioner's arguments will be considered.

## III.

### DISCUSSION

The petitioner argues that the circuit court erred in permitting the State to use evidence obtained from his home pursuant to and subsequent to an illegal warrantless search and seizure. He states that warrantless searches are per se unreasonable under the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution, subject to only a few specific exceptions. More specifically, the petitioner states that officers may only bypass judicial approval of a search warrant for an immediate need for assistance in the protection of human life, if the search or entry is motivated by an emergency rather than by an intent to arrest or secure evidence, and if there is a reasonable connection between the emergency and the area in question. The petitioner argues that none of the exceptions were present in his situation and therefore,

(1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

**2.** The Fourth Amendment applies to the states through application of the Fourteenth Amendment of the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). Article 3, Section 6 of the West Virginia Constitution is generally construed in harmony with the Fourth Amendment of the United States Constitution. *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973).

the order denying his motion to suppress the evidence should be reversed. The petitioner relies on *State v. Bookheimer*, 221 W.Va. 720, 656 S.E.2d 471 (2007), for the conclusion that the circuit court order should be reversed. In *Bookheimer*, this Court reversed an order denying a motion to suppress evidence when there were no exigent circumstances present to make the responding officers' warrantless entry into the residence reasonable.

Conversely, the State contends that the admissibility of the particular evidence was properly decided by the circuit court because the search was valid. The State maintains that the officers entered the home without a warrant due to exigent circumstances, as they were concerned for their own safety. The State first points out that the petitioner did not respond to the officers when they knocked on his door and announced their presence. The State further explains that after knocking a second time on the petitioner's door, the officers heard rapid footsteps inside the home although no one responded verbally. The officers stated that they entered the home to protect their safety due to specific circumstances that existed that night. As such, the State argues that the circuit court's decision must be upheld.

■■■ The petitioner correctly states that where an encounter rises to the level of a "search" or "seizure," both the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution require the search or seizure to be reasonable and that the governmental actor have probable cause and, absent a recognized exception, a validly issued warrant. Moreover, searches and seizures performed without a valid warrant are presumed to be unreasonable and will be lawful only if the search and seizure falls within a recognized exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 575–576 (1971); *accord Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (valid warrant requirement supported by probable cause "subject only to a few specifically established and well-delineated exceptions"). In Syllabus Point 20 of *State v. Ladd*, 210 W.Va. 413,

557 S.E.2d 820 (2001), this Court explained as follows:

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution-subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative." Syllabus Point 1, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980), overruled in part on other grounds by *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991).

*See also State v. Kendall*, 219 W.Va. 686, 639 S.E.2d 778 (2006). Examples of recognized exceptions to the general warrant requirement include certain brief investigatory stops, searches incident to a valid arrest, seizures of items in plain view, searches and seizures justified by exigent circumstances, consensual searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable. Warrantless Searches and Seizures, 37 Geo.L.J. Ann.Rev.Crim. Proc. 39, 40 (2008). *See also State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973).

■■■ This Court has held that:

[a]lthough a search and seizure by police officers must ordinarily be predicated upon a written search warrant, a warrantless entry by police officers of a mobile home was proper under the "emergency doctrine" exception to the warrant requirement, where the record indicated that, rather than being motivated by an intent to make an arrest or secure evidence, the police officers were attempting to locate an injured or deceased child, which child the officers had reason to believe was in the mobile home, because of information they received immediately prior to the entry. Syllabus Point 2, *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983). Stated more generally,

the emergency doctrine has been defined in various ways and must be considered

upon a case by case basis.... [T]he emergency doctrine may be said to permit a limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable connection between the emergency and the area in question.

*Cecil,* 173 W.Va. at 32, 311 S.E.2d at 149 (internal citations omitted). Moreover,

"The test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable, well-trained police officer would believe." Syl. Pt. 2, *State v. Canby,* 162 W.Va. 666, 252 S.E.2d 164 (1979).

Syllabus Point 3, *State v. Mullins,* 177 W.Va. 531, 355 S.E.2d 24 (1987).

■ At the outset, this Court notes that the petitioner's reliance on *Bookheimer* is misplaced. This Court in *Bookheimer* considered the convictions of two defendants for conspiracy and for operating a clandestine drug laboratory. In that case, an anonymous 911 call alleging a domestic dispute involving gunshots, yelling, and screaming was received. As officers arrived, they saw one of the residents standing outside the home. She told the officers that they were not needed, they were unwanted, and to leave her home. In spite of this information, the officers proceeded to enter the front door to check on the other resident. That defendant told the officers that he was in the bathroom and would be out when he finished. While in the home, the officers noticed materials normally used in the manufacture of methamphetamine. The officers detained both defendants while another officer went to magistrate court to obtain a search warrant

for the purpose of obtaining evidence showing the operation of a clandestine drug laboratory.

The circuit court in *Bookheimer* denied a subsequent motion to suppress the evidence; however this Court reversed that decision based upon the specific facts of that case. This Court noted that "neither defendant exhibited any signs that would make it reasonable for the deputies to think entry into the residence was necessary on the basis of affording protection to the resident." 221 W.Va. at 728, 656 S.E.2d at 479. The Court further held that "[n]o emergency situation or exigent circumstance existed that would have made the warrantless entry reasonable under the state and federal constitutions." 221 W.Va. at 729, 656 S.E.2d at 480. The Court was also critical of the fact that the officers relied solely on a tip by an anonymous caller noting that the officers did not have any individualized suspicion that a firearm was present or that a firearm posed a threat to the well-being of anyone present. 221 W.Va. at 728, 656 S.E.2d at 479.

The situation *sub judice* is vastly different from the facts of *Bookheimer.* Troopers Brewer and Vance both testified at the suppression hearing that after hearing rapid movement inside the home and knowing and/or believing that the petitioner had a gun, they entered the home for the purpose of maintaining their own safety and the safety of the other officers. Unlike the anonymous call in *Bookheimer,* the source of the information in the petitioner's case came from multiple eyewitnesses as a result of an ongoing police investigation. Moreover, the officers in the instant case entered the petitioner's home after hearing rapid movement behind the door and realizing that their safety might be in jeopardy, whereas in *Bookheimer,* the defendant had verbally responded to the police officers that he was in the bathroom and would be out when he finished. Also, the officers in the instant case knew that the petitioner had failed at robbing the Little General and might be upset as a result. The officers testified that they entered the residence to maintain their own safety and not for the purpose of searching the residence.

Senior State Police Trooper Jared Brewer explained the circumstances from the night in question surrounding the evidence taken from the petitioner's home. He testified at the suppression hearing that after being advised by the Boone County dispatch of an armed robbery occurring at the Little General, he proceeded to the store. He said the store clerk explained that the petitioner wore a black mask "with one round hole in the front, and [had] a black handgun." He also noted that Matthew Doss, a citizen who observed the store clerk struggling with the petitioner, said that an older model red Chevy S–10 was parked just above the Little General. Trooper Brewer also spoke with Jason Hoosier who observed the same vehicle, quickly driving away from the Little General. After receiving information that the vehicle might belong to a man named Tom Lester, Trooper Brewer and Trooper Vance went to his home. Trooper Vance felt the hood of the vehicle and said that it was still hot. After Mr. Lester implicated the petitioner as the individual who committed the armed robbery, the officers proceeded to the petitioner's home.

Upon arrival, Trooper Brewer observed that the petitioner's home was located below the road and that their vehicles could not be parked at the home. As such, the officers had to park approximately one hundred feet away from the home. Trooper Brewer explained that he and Trooper Vance approached the door and realized that they were positioned under a light making them visible to anyone in the home. He further said that as they approached the front door, he proceeded with what he referred to as "a knock and announce" wherein he said officers "knock, you knock loud, you announce loud, who you are. You know, wham, wham, wham! State Police! So they know." He said he knocked on the petitioner's door loudly and proclaimed: "State Police!" Trooper Brewer said that after the first "knock and announce" he did not hear anything from inside the home. He said that he waited between one and two minutes before executing a second "knock and announce." It was at this time when he could hear rapid footsteps as if someone was running through the house. Because of concern for their safety, the officers entered the petitioner's home. Trooper Brewer explained:

I'm lit up on a hillside. I know the man ... did not successfully rob this store. He is upset ... and I know he has a weapon. I hear him running, and running is not typical when I knock and announce. People come to the door and say, "There in a minute, or I'll be right with you." You don't hear running without any talk. I'm not going to get shot.

Trooper Brewer explained that he was in a dangerous situation standing in the doorway referring to it as a "fatal funnel." He said because of where the officers were standing, the petitioner could have shot in the officers' direction, and there was a high likelihood that one of them would have been killed or, at least, wounded. He said he had to act fast because he had knowledge that the petitioner was armed and refused to respond to his knock and announce. He said: "I heard running through the house, and I have information that he's got a weapon. I don't know if he's running towards me or to conceal himself, or shoot out a window, and I didn't want to stand around to find out. I'm [standing under a well lit area], and he's not." He further explained: "If you go to the door with the information the guy has a gun and just tried to commit an armed robbery, and you hear running through the house at nighttime, and you're lit up at a fatal funnel, you enter, because you can't backtrack if you're shot." Trooper Brewer said that given the position he was in at the time, retreating was not an option, and he entered the home to save his life and to eliminate the threat to the other officers.

State Police Trooper First Class Michael Vance also testified about the events of that evening including the fact that prior to knocking on the petitioner's door, he was informed that the petitioner had attempted to rob the Little General by using a gun. He also said that there was no response to the first "knock and announce" at the petitioner's front door. He explained that nearly two minutes later, after the second "knock and announce," he heard someone running through the residence of the home yet no one verbally responded. He said a decision was

made at that point to enter the home solely for the purpose of the officers' safety. He testified:

> Well, you know, at this point in time I'm thinking that I'm dealing with an armed robbery suspect. Two, we know there's a gun involved. And three, just from past experiences and everything, my main concern was, I'm going home. I don't want to—I don't want to die on this subject's porch. I don't want to receive any injuries from this subject. More or less I was just concerned about my safety, as well as the other officers' safety.

When asked why he did not simply retreat when the petitioner ran through his home and did not verbally respond to the knock and announce, Trooper Vance explained: "The way the residence sits from our car was kind of over an embankment, and being through tactical schools and everything of that nature, it was actually an officer's worst nightmare to approach that residence." He further said: "Well, you've probably often heard it referred to as the fatal funnel. It's—there's no—there's no cover, there's no concealment. There's artificial lighting from, you know, pole lights, and things of that nature, porch lights."

As this Court held in Syllabus Point 2 of *WV Dept. of Health & Human Resources Employees Federal Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004),

> "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus Point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966).

When viewing the evidence in the light most favorable to the prosecution, and in consideration of "the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, ... [the petitioner] might, during the time necessary to procure a warrant, endanger the safety ... of others." Syllabus Point 3, *Mullins, supra.* As such, in consideration of the entire record, this Court finds no error, and therefore, must affirm the circuit court's holding that the search was valid.

## IV.

## CONCLUSION

For the reasons stated above, we affirm the order of the Circuit Court of Boone County entered on March 24, 2011.

Affirmed.