No. 13-0144  -    *State v. Curtis Joseph Kimble*

**FILED**

**March 12, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, C.J., dissenting:

The defendant in this case was sentenced to imprisonment for five years upon his conviction for wanton endangerment.  In this proceeding, the defendant argued that the trial court committed reversible error in denying his motion to suppress a shotgun that the police seized from his home without a search warrant.  The majority opinion determined that the shotgun was lawfully seized under the emergency doctrine and the protective sweep doctrine.  For the reasons set out below, I dissent.

This Court has made clear that "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution–subject only to a few specifically established and well-delineated exceptions."  *State v. Farley*, 230 W. Va. 193, 197, 737 S.E.2d 90, 94 (2012) (internal quotations and citations omitted).  In Syllabus point 1 of *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972), we determined that,

> [e]xcept where authorized by law as incident to a lawful arrest, any search of a person or his dwelling on mere suspicion and the seizure of any article found as a result thereof, without an arrest

1

warrant or a search warrant, is an unlawful search
and seizure in violation of Section 6, Article 3 of
the Constitution of West Virginia.

*See also* Syl. pt. 2, *State v. Davis*, 170 W. Va. 376, 294 S.E.2d 179 (1982) ("A warrantless entry into a person's home either to effect his arrest or to seize his property therein contained violates the Fourth Amendment of the United States Constitution in the absence of probable cause and exigent circumstances."). Despite the majority's contrary conclusion, the record in this case plainly shows that the police possessed nothing more than a mere suspicion that the defendant had engaged in unlawful conduct when they arrested him and seized evidence from his home without a warrant.

The facts of this case are clear. On November 12, 2011, two deputies received information, based upon a 911 call, that a "shirtless male wearing jeans and a black hat" fired shots at a vehicle in the area of Poindexter Road and Ashland Upland Road in Mason County. Based solely upon this information, the two deputies went directly to the defendant's home. To be clear, when the police went to the defendant's home, they had no objective information that identified the defendant as the person who had fired the weapon. Based purely upon alleged prior knowledge that the defendant had been accused of firing a weapon in the area in the past, the police determined that the defendant was the person who fired the weapon reported on the 911 call. The police did not go to the residence of the

2

victim to obtain a description of the person.[1]  Nor did the police go to a magistrate to obtain

an arrest warrant.  The police arbitrarily determined that the warrant requirement of the state

and federal constitutions did not apply when they had the barest suspicion that a suspect had

committed an offense.

When the police arrived at the defendant's home, they pulled out their weapons

and ordered the defendant to come outside.  Rather than questioning the defendant, in an

investigative manner when he came outside, the police forced him to the ground and placed

handcuffs on him.[2]  At the point the police placed handcuffs on the defendant he was

effectively under arrest,[3] even though the police did not have probable cause to believe that

the defendant had committed a crime.  *See* Syl. pt. 2, in part, *State v. Duvernoy*, 156 W. Va.

---

[1]This fact is important because once the police unlawfully arrested the defendant and searched his home, they immediately took him to the victim's residence for identification.

[2]*See* Syl. pt. 2, in part, *State v. Jones*, 193 W. Va. 378, 456 S.E.2d 459 (1995) ("If the police merely question a suspect on the street without detaining him against his will, Section 6 of Article III of the West Virginia Constitution is not implicated and no justification for the officer's conduct need be shown.  At the point where a reasonable person believes he is being detained and is not free to leave, then a stop has occurred and Section 6 of Article III is triggered, requiring that the officer have reasonable suspicion that criminal activity is afoot.  If the nature and duration of the detention arise to the level of a full-scale arrest or its equivalent, probable cause must be shown.").

[3]"Our case law long ago abandoned the notion that law enforcement officers must form[a]rly state to a suspect that he or she is under arrest in order for an arrest to actually occur." *State v. Milburn*, 204 W. Va. 203, 214, 511 S.E.2d 828, 839 (1998) (Davis, C.J., dissenting).

3

578, 195 S.E.2d 631 (1973) ("An officer, with authority to conserve the peace, may, without a warrant, arrest any person who he, upon probable cause, believes has committed or is committing a felony[.]"). Insofar as the defendant was in custody because he was not free to leave, the police could not question him without informing him of his *Miranda* rights.[4] This Court has held that a "determination of whether a custodial interrogation environment exists for purposes of giving Miranda warnings to a suspect is based upon whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." Syl. pt. 1, in part, *State v. Middleton*, 220 W. Va. 89, 640 S.E.2d 152 (2006), *overruled on other grounds by State v. Eilola*, 226 W. Va. 698, 704 S.E.2d 698 (2010). Obviously, any reasonable person handcuffed and lying on the ground, with police officers pointing guns at him, would believe he was under formal arrest.

---

[4]In *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612, 16 L. 2d. Ed. 694 (1966), the United States Supreme Court set forth the requirements for interrogating a suspect as follows:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

Although the defendant was in custody, the police interrogated him about a self-incriminating matter without informing him of his *Miranda* rights. Specifically, the police asked the defendant for the location of his shotgun. With guns pointed at him, the defendant responded to the unlawful interrogation by stating that his shotgun was inside his home. The record is quite clear that at no time did the police ask for the defendant's consent to enter his home, nor did he give consent for the police to enter his home. We have held that, "[a]s a general rule, a warrantless search of an individual's home is constitutionally prohibited." *State v. Flippo*, 212 W. Va. 560, 567 n.7, 575 S.E.2d 170, 177 n.7 (2002). Article III, § 6 of the West Virginia Constitution provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

The purpose of Article III, § 6 "is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement officers, so as to safeguard the privacy and security of individuals against arbitrary invasions [by governmental officials]." *State v. Legg*, 207 W. Va. 686, 692, 536 S.E.2d 110, 116 (2000) (internal quotations and citations omitted). "Moreover, searches and seizures performed without a valid warrant are presumed to be unreasonable[.]" *State v. Farley*, 230 W. Va. 193, 197, 737 S.E.2d 90, 94 (2012). As a result of the police entering the defendant's home

5

without consent or a warrant, and for the express purpose of searching for what was believed to be evidence, the entry was unlawful.

While unlawfully inside the defendant's home, the police seized a hat and a shotgun.[5] The trial court, in an inexplicable ruling, determined that the hat was seized unlawfully, but that the shotgun was seized lawfully. Consequently, the trial court allowed the shotgun to be introduced into evidence. The majority opinion affirmed the trial court's ruling allowing the shotgun to be introduced as substantive evidence. In doing so, the majority opinion erroneously found that two exceptions to the warrant requirement allowed the police to enter the defendant's home: the emergency doctrine and the protective sweep doctrine. The majority opinion is wrong. The State failed to prove that either doctrine was applicable to justify their unlawful entry, search, and seizure.

This Court adopted the emergency doctrine exception in *State v. Cecil*, 173 W. Va. 27, 311 S.E.2d 144 (1983). In *Cecil*, we held that the emergency doctrine exception permits

> [a] limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable

---

[5]The police obtained the hat during a second unlawful entry into the home.

6

connection between the emergency and the area in question.

*Cecil*, 173 W. Va. at 32, 311 S.E.2d at 149 (citation omitted). The majority opinion summarily determined that the emergency doctrine applied to the facts of this case. This summary treatment was given because, as I will demonstrate, an actual analysis of the elements of the emergency doctrine proves that it did not justify the entry into the defendant's home.

The first requirement under the emergency doctrine for entering a citizen's home without a warrant is that there must be an immediate need for the police to provide assistance to someone in the home. The second requirement for entering a citizen's home without a warrant is that such entry must not be based upon an intent to secure evidence. The third requirement demands a reasonable connection between the emergency and the area searched. These three requirements were illustrated in Syllabus point 2 of *Cecil* by using the following factual example:

> Although a search and seizure by police officers must ordinarily be predicated upon a written search warrant, a warrantless entry by police officers of a mobile home was proper under the "emergency doctrine" exception to the warrant requirement, where the record indicated that, rather than being motivated by an intent to make an arrest or secure evidence, the police officers were attempting to locate an injured or deceased child, which child the officers had reason to believe was in the mobile home, because of information they received immediately prior to the entry.

173 W. Va. 27, 311 S.E.2d 144. *Cecil* demonstrates the limitations imposed by the elements of the emergency doctrine. The invasion of a citizen's home must be for the limited purpose

7

of protecting life that is believed to be inside the home. The emergency doctrine does not allow the police to invade a citizen's home for the purpose of collecting evidence. In the instant proceeding, there was absolutely no showing that the police entered the defendant's home because they believed someone was inside that needed assistance. The sole purpose for entering the home, as stated by the police when they questioned the defendant, was to find the weapon they believed was used in the report of shots being fired at a passing car. Under these facts it is inconceivable that the majority opinion would rely on the emergency doctrine as a justification for the police invading the defendant's home without a search warrant.

The majority's reliance on the protective sweep doctrine as an additional basis for affirming the illegal search of the defendant's home is equally misguided. The protective sweep doctrine was first recognized by the United States Supreme Court in *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990). In *Buie*, the police entered the defendant's home to execute an arrest warrant. After the defendant was apprehended coming from the basement of the home, an officer entered the basement to search for anyone else who might have been in the basement. In making this search, the officer saw and seized inculpatory evidence that was in plain view. The Supreme Court approved of the officer searching the basement for an attacker who could injure police officers present at the scene. Consequently, the opinion in *Buie* held that, during an arrest, the police may conduct a protective sweep of the premises if there are "articulable facts which, taken together with the

8

rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d 276.  The decision in *Buie* was careful to state that a protective sweep "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  *Buie*, 494 U.S. at 327, 110 S. Ct. at 1094, 108 L. Ed. 2d 276.

Although *Buie* concerned a limited search for an attacker in the home, this Court applied *Buie* to a search for weapons in Syllabus point 8 of *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996), as follows:

> A protective search is defined as a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is present and poses a threat to the well-being of himself and others. This cursory visual inspection is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured.

Under the facts of this case, the protective sweep doctrine simply had no application.  First, implicit in *Buie* and *Lacy* is that the police must initially be engaged in lawful conduct when they trigger the protective sweep doctrine.  In this case, the police had unlawfully arrested the defendant.  In other words, the police cannot engage in unlawful conduct and use that conduct to illegally enter the defendant's home.  Second, the record is clear in showing that the police had their weapons drawn when they forced the defendant to the ground and

9

handcuffed him. At this point, there is nothing in the record to mildly suggest that the two deputies were in danger. The person they believed to have fired a gun at a motorist was lying helpless at their feet and staring at the barrels of their drawn weapons. In fact, the only person in danger at this juncture was the defendant, because he could have been killed by an accidental firing of one of the two weapons pointed at him. In spite of the police having absolute unlawful control of the defendant and not a scintilla of evidence showing they were in any danger because of their unlawful conduct, the majority opinion found that the police could enter the defendant's home to search for his weapon in order to protect themselves. This conclusion by the majority is most troubling.

By applying the emergency doctrine and the protective sweep to the facts of this case, the majority opinion has nullified in the State of West Virginia the application of the warrant requirement of the Fourth Amendment to the United States Constitution and Article III, § 6 of the West Virginia Constitution.

For the foregoing reasons, I must respectfully dissent.