IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0252
_____

**FILED**

**June 3, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent,

v.

JUAN MCMUTARY,
Petitioner.

_____

Appeal from the Circuit Court of Wood County
The Honorable John Beane, Judge
Civil Action No. 21-F-266

AFFIRMED, IN PART, REVERSED, IN PART, AND REMANDED WITH
DIRECTIONS
_____

Submitted: April 30, 2024
Filed: June 3, 2024

Matthew Brummond, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrissey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Andrea Nease Proper, Esq.
Deputy Attorney General
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syl. Pt. 1, in part, *State v. Farley*, 230 W. Va. 193, 737 S.E.2d 90 (2012) (citation omitted).

2.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.      "On appeal, legal conclusions made with regard to suppression determinations are reviewed de novo. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference."  Syl. Pt. 3, State v. Stuart, 192 W. Va. 428, 452 S.E.2d 886 (1994).

i

4.      Under West Virginia Constitution article III, section 6, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

5.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

6.      "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982).

7.      "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 S.E.2d 921 (1963).

8.      "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989).

ARMSTEAD, Chief Justice:

A police officer initiated a traffic stop after she observed Juan McMutary ("petitioner") drive his car over the road centerline. The officer conducted a search of petitioner's vehicle with petitioner's permission. During the search, the officer uncovered a firearm and four bags later determined to contain illegal drugs. As a result, petitioner was indicted, tried, and convicted by a jury of possession of a firearm by a prohibited person; felony possession of a controlled substance, fentanyl, with intent to deliver in an amount more than one gram but less than five grams, which resulted in a sentence enhancement under West Virginia Code § 60A-4-415(b)(2) (*repealed by* Acts 2022, c. 58, eff. June 10, 2022); and misdemeanor possession of a controlled substance.

Petitioner appeals two orders from the Circuit Court of Wood County. The first denied his motion to suppress the evidence collected by the police officer during the search of petitioner's vehicle, and the second denied his motion for judgment of acquittal pursuant to the sentence enhancement imposed under West Virginia Code § 60A-4-415(b)(2).

For the reasons explained below, we affirm the circuit court's order denying petitioner's motion to suppress; we reverse the conviction and sentencing order which enhanced petitioner's sentence under West Virginia Code § 60A-4-415(b)(2); and remand for resentencing under West Virginia Code § 60A-4-415(b)(1).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2020, a Wood County deputy sheriff surveilled a known drug house in Parkersburg, West Virginia, after the Parkersburg Narcotics Task Force contacted her to

1

report that a person driving a silver Toyota Camry was visiting the house and might be involved in drug trafficking. The officer witnessed an individual, later identified as petitioner, exit the house and drive away in a silver Toyota Camry. She followed in her police cruiser and observed petitioner's car swerve over the centerline of a two-lane roadway. The officer initiated a traffic stop for that traffic infraction. Petitioner pulled over but drove away when the officer pulled her cruiser behind his car. The officer pursued petitioner with her lights and siren engaged, and petitioner eventually stopped. Petitioner complied throughout the subsequent interaction. The officer handcuffed petitioner noting his prior attempt to flee. Petitioner consented to a search of his vehicle. He informed the officer of a weapon in the car, and she retrieved a loaded 9mm pistol. After running petitioner's driver's license through the police database, the officer discovered his license to be suspended. The database search also revealed that petitioner was a registered sex offender and had a conviction of domestic battery. She therefore determined that petitioner was prohibited from possessing a firearm.

Other officers arrived to assist with the stop, and petitioner confirmed petitioner's permission for them to search his car. During that search, officers discovered two small packages of substances they suspected to be heroin. An officer reached into petitioner's pocket to retrieve the car's key fob and discovered two more small packages of unknown substances. All four packets were sent off for testing which revealed that three packets contained fentanyl; the fourth packet contained methamphetamine.

Related to this traffic stop, petitioner was indicted for (1) possession of a firearm by a prohibited person in violation of West Virginia Code § 61-7-7(b)(1) (2016);

2

(2) Possession of a Controlled Substance with Intent to Deliver, with the net weight of the fentanyl being more than one gram but less than five grams, in violation of West Virginia Code § 60A-4-401(a)(i) (eff. 2020) (amended 2022) and § 60A-4-415(b)(2); and (3) Possession of a Controlled Substance, methamphetamine, in violation of West Virginia Code § 60A-4-401(c).[1] Pursuant to Rule 12 of the West Virginia Rules of Criminal Procedure, petitioner filed a pretrial motion to suppress the fruits of the vehicle search, which the circuit court denied. *See* W. Va. R. Crim. Pro. 12.

At the conclusion of petitioner's trial on those counts, the jury convicted him of (1) possession of a firearm by a prohibited person, as charged in Count One of the indictment; (2) felony possession of a controlled substance, fentanyl, with intent to deliver in an amount more than one gram but less than five grams as charged in Count Two of the indictment; and (3) misdemeanor possession of a controlled substance, as charged in Count Three of the indictment. The circuit court sentenced petitioner to a cumulative term of eight to fifteen years. The sentence included the enhancement for the offense of conviction in Count Two, set forth in West Virginia Code § 60A-4-415(b)(2), which increased sentencing for certain drug crimes involving a specified weight of fentanyl. *See* W. Va. Code § 60A-4-415(b)(2) (*repealed by* Acts 2022, c. 58, eff. June 10, 2022). Under the enhancement, petitioner's minimum sentence increased to three years from the unenhanced

---

[1] Petitioner's indictment contained two additional counts, but the circuit court granted petitioner's motion for relief from prejudicial joinder and only tried the first three counts of the indictment.

statutory minimum of one year for possession with intent to deliver fentanyl, and his maximum sentence increased from ten to fifteen years. *Compare* § 60A-4-415(b)(1) *with* § 60A-4-415(b)(2).

Following the entry of the circuit court's order denying petitioner's motion to suppress and its subsequent sentencing order, petitioner filed this appeal.

## II. STANDARD OF REVIEW

When reviewing a lower court's ruling on a motion to suppress, we show great deference to the circuit court regarding its factual findings:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, in part, *State v. Farley*, 230 W. Va. 193, 737 S.E.2d 90 (2012) (citation omitted).

Additionally, we review a circuit court's ruling on a motion to suppress under a two-tier standard:

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review de novo questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995) (Footnotes omitted).

Finally, "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed de novo. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

We review issues of the sufficiency of the evidence to support a conviction using the following standard:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

### III. ANALYSIS

In this appeal, petitioner challenges two circuit court rulings. First, he argues that the circuit court erred when it denied his motion to suppress evidence collected during a police search of his vehicle. Second, petitioner argues that the circuit court erred when it denied his motion for a judgment of acquittal based on his claim that there was "insufficient evidence of the 'weight of fentanyl involved in the offense[]'" to support the conviction. We address each argument in turn.

5

*A. The circuit court correctly denied petitioner's motion to suppress the evidence collected in the officers' search of the vehicle.*

Petitioner argues that the court erred by denying his motion to suppress the evidence from the vehicle search because the police officer lacked reasonable suspicion to conduct the traffic stop. Petitioner argues he was racially profiled, and the traffic stop constituted a pretextual and unlawful search and seizure in violation of his rights under the West Virginia and United States Constitutions.[2]

Based on the arresting officer's testimony, the circuit court found that the officer saw petitioner's "driver's side tires cross the double yellow center line" before she activated her emergency lights to indicate the traffic stop. There is no evidence to the contrary and, therefore, we give particular deference to this finding establishing the basis for the traffic stop. *See, e.g.*, Syl. Pt. 1, in part, *Farley*, 230 W. Va. at 193, 737 S.E.2d at 91 (citation omitted).

Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). In *Whren*, the United Stated Supreme Court considered the constitutionality of a traffic stop after an African-American driver failed to use his turn signal and drove in excess of the speed limit. The petitioner in *Whren* argued that "the Fourth Amendment test for traffic stops should be, not the normal one . . . of whether probable cause existed to justify the stop; but rather, whether a police officer, acting

---

[2] W. Va. Const. art. III, § 6; U.S. Const. amend. IV.

reasonably, would have made the stop for the reason given." *Id*. The Court rejected this position and explained that a traffic stop for a traffic violation is to be reviewed under a purely objective standard without regard for an officer's subjective intent:

> We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.

*Id*. at 813. The petitioner in the case before us recognizes we are bound by *Whren* as a matter of federal law but argues that this Court should not follow *Whren* and should rely instead on the West Virginia Constitution to adopt a more demanding subjective intent test. We disagree.

This Court has followed the *Whren* rationale when examining the constitutionality of sobriety checkpoints:

> For the purposes of the protections afforded to the citizens of West Virginia by the United States Constitution and the Constitution of West Virginia, we must reconcile if the stopping of a vehicle at a so-called administrative checkpoint is any less of a seizure than the stopping of that same vehicle at a sobriety checkpoint[.] In doing so, we are mindful that the United States Supreme Court has held that in order for a checkpoint to satisfy the constitutional requirements of the Fourth Amendment, the seizure must be reasonable under the circumstances. *Whren* [at 809], L.E.2d [at 95]. This reasonableness requirement is an objective standard that does not permit an inquiry into the law enforcement officers' subjective motivations.

7

*State v. Sigler*, 224 W. Va. 608, 616, 687 S.E.2d 391, 399 (2009).[3]

> For this reason, we reiterate that
>
> [w]e are cognizant of the recent decision in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), where the United States Supreme Court unanimously held that the subjective intent or motive of the police is immaterial in determining the legality of an arrest. All the police need for a search to be a lawful arrest is probable cause: "The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."

*State v. Todd Andrew H.*, 196 W. Va. 615, 621, n.9, 474 S.E.2d 545, 551 n.9 (1996) (quoting *Whren*, 517 U.S. 806, 116 S. Ct. at 1775) (emphasis in original); *see also Muscatell v. Cline*, 196 W. Va. 588, 597, 474 S.E.2d 518, 527 (1996) ("It appears that if the trooper did indeed observe such a misdemeanor violation of the 'rules of the road', his stop would clearly be justified in any event.").[4]

---

[3] We note that other states have included West Virginia in their indexing of states that have followed *Whren*. *See People v. Robinson*, 767 N.E.2d 638, 642 (N.Y.2001) (collecting cases); *Fertig v. State*, 146 P.3d 492, 500 (Wyo.2006).

[4] Petitioner relies on Justice Workman's dissent in *Muscatell* to support his contention that officers must reasonably suspect the crime motivating the stop, and that the police officer's reasonable suspicion that petitioner crossed the centerline amounted to pretext, which, he argues, does not support a police vehicular search in this State. *See Muscatell*, 196 W. Va. 588, 474 S.E.2d 518 (Workman, J. dissenting). In her dissent, Justice Workman favored a totality of the circumstances test by which the reasonableness of traffic stops would be determined by the specific facts and circumstances of each individual case. Petitioner's reliance on the dissent is misguided. "It is axiomatic that a dissenting opinion is generally the least reliable place to look to discern the meaning of a majority opinion[,]" and "dissenting opinions are 'rarely a safe guide to the holding of the majority.'" *Bronx Household of Faith v. Bd. Of Ed. of Cty. Of New York*, 650 F.3d 30, 49

(continued . . .)

Since petitioner does not dispute that he committed a traffic infraction when he drove over the centerline of the road, the inquiry into the police officer's intent ends there.[5] Applying the objective rationale test as promulgated in *Sigler*, *Todd Andrew H.*, and *Muscatell*, and by the United States Supreme Court in *Whren*, the officer's subjective reasons for following petitioner's car are irrelevant; she developed probable cause to conduct a traffic stop when she witnessed petitioner commit a traffic infraction.[6] For these reasons, we now hold that under West Virginia Constitution article III, section 6, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

---

(2d Cir. 2011). Furthermore, petitioner mischaracterizes the *Muscatell* dissent. Indeed, Justice Workman agreed with the objective standard adopted from *Whren*: "the trooper's conduct was equally justified under the reasonable suspicion standard if the stop of the vehicle was precipitated by the trooper's observation of a traffic violation." *Muscatell*, 196 W. Va. at 599, 474 S.E.2d at 529.

[5] This case is distinguishable from *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994), because the officer stated that she stopped petitioner's vehicle for the traffic violation, not because she suspected that he was committing a crime. *See* Syl. Pt. 1 *Stuart* ("Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime. To the extent *State v. Meadows,* 170 W.[]Va. 191, 292 S.E.2d 50 (1982), holds otherwise, it is overruled.").

[6] As we held in the syllabus of *Simon v. W. Va. Dep't of Motor Vehicles*, 181 W. Va. 267, 382 S.E.2d 320 (1989), "[p]robable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence."

Regardless, nothing in the evidence presented at trial supports petitioner's contention that the traffic stop was racially motivated or pretextual, and there is no dispute that, once stopped, petitioner verbally consented to the search of his vehicle and, consequently, the search itself did "not violate the constitutional prohibition against unreasonable searches and seizures." Syl. Pt. 1, *in part*, *State v. Buzzard*, 194 W. Va. 544, 545, 461 S.E.2d 50, 51 (1995).[7] Based on the foregoing, we reject petitioner's argument that the court erred by denying his motion to suppress the evidence from the vehicle search.

### B. The evidence presented at trial failed to support the conviction and sentence under West Virginia Code § 60A-4-415(b)(2).

After a jury convicted petitioner of Count Two, felony possession of a controlled substance with intent to deliver, with the net weight of the fentanyl involved being one or more grams but less than five grams, under West Virginia Code § 60A-4-401(a)(i) and § 60A-4-415(b)(2), he filed a motion for judgment of acquittal because he claimed "insufficient evidence of the 'weight of fentanyl involved in the offense[]'" supported the conviction.[8] The circuit court denied the motion, and, after sentencing him,

---

[7] Petitioner does not challenge the voluntariness of his consent for the officers to search his vehicle. When questioned at oral argument to this Court, petitioner's counsel clarified that petitioner only challenges the police officer's reasons for initiating the traffic stop.

[8] West Virginia Code § 60A-4-415(b)(2) as it existed prior to the 2022 repeal and at the time of the sentencing order subject to this appeal, provided,

> (b) "Any person who violates the provisions of subsection (a) . . . § 60A-4-401of this article or . . . §60A-4-409 of this article in which fentanyl

(continued . . .)

10

also denied petitioner's subsequent motion for reconsideration of his sentence which raised the same issue. Because the offense of conviction under West Virginia Code § 60A-4-415(b)(2) required that the jury find, beyond a reasonable doubt, certain elements relating to the weight of the fentanyl, we must analyze the sufficiency of the evidence to determine whether it supports the conviction and subsequent enhanced sentence. Our inquiry is whether the evidence presented in the light most favorable to the prosecution supports "the essential elements of the crime proved beyond a reasonable doubt" for the conviction and subsequent application of the statutory sentencing enhancement. *See* Syl. Pt. 1, *Guthrie*, 194 W. Va. 657 at 663, 461 S.E.2d at 169.

Count Two of petitioner's indictment alleged violations of both West Virginia Code § 60A-4-401(a)(i)[9] and § 60A-4-415(b)(2). When petitioner was indicted

---

is a controlled substance involved in the offense, whether alone or in combination with another controlled substance, shall be guilty of a felony, and upon conviction thereof, shall be punished in accordance with the following:

. . .

(2) If the net weight of fentanyl involved in the offense is one gram or more but less than five grams, such person shall be imprisoned in a correctional facility not less than three nor more than fifteen years.

[9] West Virginia Code § 60A-4-401(a)(i) as it existed prior to the 2022 amendments and at the time of the sentencing order subject to this appeal, provided,

(continued . . .)

11

for a violation of § 60A-4-401 and § 60A-4-415(b)(2), W. Va. Code § 60A-4-415(b), provided for a mandatory minimum sentence of three years and a maximum of fifteen years imprisonment for possession with intent to deliver one to five grams of fentanyl. *See* W.

---

(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.

Any person who violates this subsection with respect to:

(i) A controlled substance classified in Schedule I or II, which is a narcotic drug or which is methamphetamine, is guilty of a felony and, upon conviction thereof, may be imprisoned in a state correctional facility for not less than one year nor more than 15 years, or fined not more than $25,000, or both fined and imprisoned.

The amendment to this section, adopted during the 2022 Legislative session and effective ninety days from its passage on March 12, 2022, repealed the weight-based penalty related to fentanyl contained in § 60A-4-415(b)(2), and added, *inter alia*, the following language at the end of subsection (i) of § 60A-4-401(a)(i):

*Provided*, That any person who violates this section knowing that the controlled substance classified in Schedule II is fentanyl, either alone or in combination with any other substance shall be fined not more than $50,000, or be imprisoned in a state correctional facility for not less than 3 nor more than 15 years, or both fined and imprisoned[.]

We recognize that the Legislature's 2022 action in repealing the weight-based sentencing enhancement relating to fentanyl under which the petitioner was convicted and sentenced in favor of a more general prohibition that includes the language "either alone or in combination with any other substance" renders this opinion limited in scope to sentences imposed under the prior version of the statute. Nonetheless, because the petitioner here was, in fact, convicted and sentenced under the prior version, remand for resentencing is appropriate under these limited circumstances for the reasons set forth herein.

Va. Code § 60A-4-415(b)(2) ("If the net weight of fentanyl involved in [a violation of § 60A-4-401] is one gram or more but less than five grams, such person shall be imprisoned in a correctional facility not less than three nor more than fifteen years.").

Petitioner argues that the State failed to prove beyond a reasonable doubt that he possessed a net weight of one to five grams of fentanyl as required by § 60A-4-415(b)(2), so the evidence did not support the conviction and subsequent sentencing enhancement. The State counters that the statute did not require the State to quantify the weight of pure fentanyl in the packages, but that the statutory scheme in Chapter 60A, the West Virginia Controlled Substances Act ("WVCSA"), allows us to consider the total weight of the substance at issue, including mixtures or compounds when determining whether evidence supports the weight element. In other words, petitioner asks us to apply the plain meaning of the statute while the State seeks our interpretation of its language.

Our first step is to determine whether the State presented sufficient evidence to support petitioner's conviction, when the evidence presented by the State did not include quantification of fentanyl amount. We must determine whether § 60A-4-415(b)(2) is ambiguous as to quantification to justify an interpretation of its terms. "A statute is open to construction only where the language used requires interpretation because of ambiguity . . . ." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). In contrast, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

We are mindful that some interpretation or construction is involved when we assign statutory words their ordinary significance and meaning. "To ascertain the meaning and significance of thoughts expressed in words" is to "interpret" a writing. *Interpret*, *Black's Law Dictionary* (11th ed. 2019). "Indeed, '[a]ny meaning derived from signs involves interpretation, even if the interpreter finds the task straightforward.'" *Beasley v. Sorsaia*, 247 W. Va. 409, 412, 880 S.E.2d 875, 878 (2022) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 53 (2012) (footnote omitted)).

With this distinction in mind, we will not, under the guise of interpretation or construction, "look for or impose another meaning" when the text of the statute is "plain and unambiguous and conveys a clear and definite meaning[.]" *Hereford*, 132 W. Va. at 386, 52 S.E.2d at 747 (quoting 50 Am. Jur., *Statutes*, § 225). We "presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

The WVCSA was adopted and codified in 1971 and derived, at least in part, from the Uniform Controlled Substances Act ("UCSA"). *See State v. Young*, 185 W. Va. 327, 335, 406 S.E.2d 758, 766 (1991). The UCSA, in turn, was derived from its federal counterpart, the Controlled Substances Act, codified in 21 U.S.C. §§ 801-871. The federal criminalization of controlled substance distribution is governed by 21 U.S.C. § 841, which also establishes amounts of controlled substances and their coinciding penalties. That statutory provision utilizes more expansive language than the WVCSA. *Id.* For example, 21 U.S.C. § 841 enhances the punishment for "1 kilogram or more *of a mixture or*

14

*substance containing* a detectable amount of any analogue of [fentanyl]."[10]  *See* 21 U.S.C. § 841(b)(1)(B)(vi) (emphasis added).  In contrast, West Virginia Code § 60A-4-415(b) refers to "the net weight of fentanyl" without providing for the inclusion of mixtures or other substances in determining the weight of the fentanyl.

At the time it was enacted, West Virginia Code § 60A-4-415(b) included subsections (1) through (3) which established crimes and their corresponding penalties based on specified weights of fentanyl and their corresponding penalties; the higher the weight of fentanyl possessed by a defendant while committing the related drug offense, the more severe the penalty.  We recognize that § 60A-4-415(a)(2) defined "fentanyl" as "the substance identified in [§ 60A-2-206] . . . and any analog or derivative thereof," W. Va. Code § 60A-4-415(a)(2), and that in accordance with our definitions, "any analog thereof" generally includes compounds or mixtures. *See* W. Va. Code § 60A-1-101(n) ("'Fentanyl analog or derivative' means any substance which has a chemical structure which is substantially similar to the chemical structure of fentanyl, including . . . any compound or mixture.").  However, we distinguish the general definition of fentanyl in West Virginia Code § 60A-4-415(a)(2) from the language in § 60A-4-415(b)(1) through (3) which specified penalties associated with the "net weight" of fentanyl.  The words "net weight" modifying "fentanyl" denote a mandatory relationship between a determined threshold

---

[10]  The USCA uses the chemical term for fentanyl: "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide." *See* 21 U.S.C. § 841(b)(1)(B)(vi).

15

amount of pure fentanyl, as an element found by the jury beyond a reasonable doubt, and the subscribed penalty.[11]

The repeated use of the word "shall" throughout § 60A-4-415(b)(2) further supports a mandatory relationship between the fentanyl net weight element of the offense and punishment. "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982). The Legislature used the word "shall" in both the primary section of § 60A-4-415 and all its subparts when describing the penalty associated with the criminal weight of fentanyl possessed in connection with another enumerated crime. Detaching the net weight requirement from the statutory sentence enhancement would render the subsections meaningless. "It is always presumed that the legislature will not

---

[11] The only other time the WVSCA relies on the weight of a controlled substance to affect punishment relates to marijuana possession:

> It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this act. Any person who violates this subsection is guilty of a misdemeanor . . . . : Provided, That [sic] notwithstanding any other provision of this act to the contrary, any first offense for possession of . . . less than 15 grams of marijuana, shall be disposed of under § 60A-4-407 of this code.

W. Va. Code § 60A-4-401(c).

16

enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 S.E.2d 921 (1963). To ignore the relationship between fentanyl net weight and punishment and rewrite the statute to apply more broadly to fentanyl mixtures or compounds would transform this Court from interpreter to author: "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989).

Ultimately, our "duty . . . is not to construe but to apply the statute," assigning to "its words . . . their ordinary acceptance and significance and the meaning commonly attributed to them." *Epperly*, 135 W. Va. 877 at 884, 65 S.E.2d at 492. Giving the words "net weight of fentanyl" their common meaning, we determine that West Virginia Code § 60A-4-415(b)(2) required that the State prove, beyond a reasonable doubt, that the net weight of pure fentanyl was within the charged range for the sentencing enhancement to apply. References to mixtures or compounds in other sections of the WVCSA do not modify this unambiguous language.

The West Virginia State Police forensic scientist who tested the substances testified at petitioner's trial. She explained that she tested one packet found to be methamphetamine and three packets "found to contain fentanyl." The total weight of substances in the three packets was about 2.53 grams with a margin of error of 0.04 grams per packet. The forensic scientist testified, "We don't do quantitation, so I can't say how much of that was fentanyl." Thus, the trial evidence showed that petitioner possessed 2.53 grams of a substance containing fentanyl, not that he possessed any specific "net weight"

17

of pure fentanyl. The police officer and forensic scientist described the substance as gray, powdery, and gravelly, which petitioner alleges fails to describe the appearance of pure fentanyl.[12] The State did not inquire as to whether fentanyl weight could be deduced in any way other than by scientific quantitation.

Nevertheless, the jury reported on the jury form, "We, the jury, find the [petitioner] guilty of possession of a controlled substance, fentanyl, with intent to deliver in an amount more than 1 gram but less than 5 grams as charged in Count 2 of the indictment." The enhancement scheme set forth in West Virginia Code § 60A-4-415(b)(2) is fully dependent on the jury finding beyond a reasonable doubt, as an element of the offense, "the net weight of fentanyl involved in the offense" of one to five grams of fentanyl. Petitioner's conviction of a violation of § 60A-4-415(b)(2) and subsequent sentence depended on that net weight, and was not supported by the evidence presented at trial.

*C. We remand for resentencing under West Virginia Code § 60A-4-415(b)(1).*

Although we conclude that the petitioner's conviction under West Virginia Code § 60A-4-415(b)(2) was not supported by the trial evidence, still, petitioner concedes that evidence is sufficient to find that he possessed fentanyl with intent to deliver. We now consider the statute under which petitioner should be resentenced. Through his brief to this

---

[12] Petitioner notes in his brief that pure fentanyl is a white powder. Neither the State nor defendant below inquired at trial about the appearance of pure fentanyl in comparison to the substance at issue.

18

Court and again at oral argument, petitioner sought to be resentenced under West Virginia Code § 60A-4-415(b)(1), which provides, "If the net weight of fentanyl involved in the offense is less than one gram, such person shall be imprisoned in a correctional facility not less than two nor more than ten years." (*Repealed by* Acts 2022, c. 58, eff. June 10, 2022). It is uncontested that the State proved, and the jury found beyond a reasonable doubt, all the elements of possession of fentanyl with intent to deliver pursuant to West Virginia Code § 60A-4-415(b)(1).

We inquired of the parties at oral argument before this Court about the proper statute under which we should instruct the circuit court to resentence petitioner, in the event we agreed with his position regarding the imposed sentence enhancement.[13] In response to our inquiry, petitioner's counsel reiterated his position that we remand for resentencing under § 60A-4-415(b)(1). He acknowledged that this statute established a two-to-ten-year sentence, and he argued that this statute should control rather than § 60A-4-401 because it is more specific to the crime for which petitioner was convicted under these facts. The

[13] The sentencing penalties differ under West Virginia Code § 60A-4-401(a)(i) and § 60A-4-415(b)(1). West Virginia Code § 60A-4-401(a)(i) establishes the penalty for those who violate § 60A-4-401(a) with fentanyl or other specified controlled substances. Such person "is guilty of a felony and, upon conviction thereof, may be imprisoned in a state correctional facility for not less than one year nor more than 15 years, or fined not more than $25,000, or both fined and imprisoned." W. Va. Code § 60A-4-401(a)(i) (DATE). In contrast, as quoted above, § 60A-4-415(b)(1) applies specifically to violations of § 60A-4-401 and § 60A-4-409 involving fentanyl, "[i]f the net weight of fentanyl involved in the offense is less than one gram" and establishes a punishment of two to ten years. *See* W. Va. Code § 60A-4-415(b)(1).

19

State responded that resentencing under either § 60A-4-415(b)(1) or § 60A-4-401 would be appropriate, though it sought resentencing under § 60A-4-401.

Because the elements of West Virginia Code § 60A-4-415(b)(2) could not be satisfied without satisfying the elements of § 60A-4-415(b)(1), § 60A-4-415(b)(1) is a lesser included offense of § 60A-4-415(b)(2). *See State v. Thomas*, 249 W. Va. 181, 895 S.E.2d 36, 43-44 (2023) ("'"'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk*, [169] W. Va. [24], 285 S.E.2d 432 (1981) [*overruled on other grounds, State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)].'" Syllabus Point 1, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982).' Syl. Pt. 5, *State v. Wright*, 200 W. Va. 549, 490 S.E.2d 636 (1997)" (emphasis omitted).).

Our research revealed no instance in which this Court has addressed resentencing for lesser-included offenses when a case is remanded due to insufficient evidence supporting an element of the offense that increases a sentence when all other elements have been met.[14]  However, we see no issue with petitioner's proposition that we

---

[14]  Courts in some states have reversed and remanded cases to a lower court to resentence on lesser-included offenses. *See Lewis v. Commonwealth*, 879 S.E.2d 918, 927 (Va. Ct. App. 2022) (reversing and remanding for resentencing on a lesser included offense when a statutory requirement for controlled substance wasn't met, but the parties at oral argument agreed to resentencing on the lesser-included charge).  The federal circuit

(continued . . .)

instruct the circuit court to resentence him for the crime of possession of less than one gram of fentanyl with intent to deliver under West Virginia Code § 60A-4-415(b)(1). The jury determined that petitioner possessed fentanyl with the intent to deliver, and the trial evidence supported that determination. Indeed, the jury was instructed on both West Virginia Code § 60A-4-415(b)(1) and (2) for the crime of possession of fentanyl with intent to deliver.

Therefore, under the specific facts of this case, we direct the circuit court to resentence petitioner under West Virginia Code § 60A-4-415(b)(1).

## IV. CONCLUSION

Accordingly, for the reasons stated above, we affirm the circuit court's November 12, 2021 order denying petitioner's motion to suppress. We reverse the petitioner's conviction for violating West Virginia Code § 60A-4-415(b)(2) and the related March 3, 2022 sentencing order and remand this case for resentencing under West Virginia Code § 60A-4-415(b)(1) consistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded with Directions.

---

courts, similarly, routinely order resentencing for lesser-included crimes when a conviction for a greater offense is reversed but a lesser-included offense is satisfied: "federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v. United States,* 517 U.S. 292, 306, (1996); *see also United States v. Parker*, 30 F.3d 542, 553 (4th Cir. 1994) (reversing and remanding a conviction due to insufficient evidence and ordering the lower court to resentence on a lesser included offense; noting that 28 U.S.C. § 2106 empowered the court to reach this determination).

21